805 So.2d 1220 (2002)
Roscoe B. SMITH, Plaintiff-Appellee,
v.
DISHMAN & BENNETT SPECIALITY CO., INC., Defendant-Appellant.
No. 35,682-CA.
Court of Appeal of Louisiana, Second Circuit.
January 23, 2002.
*1222 Charles Sherburne Sentell, Jr., Counsel for Defendant-Appellant.
Charles A. Smith, Counsel for Plaintiff-Appellee.
Before NORRIS, C.J., and PEATROSS and KOSTELKA, JJ.
NORRIS, Chief Judge.
The defendant, Dishman and Bennett Specialty Co., Inc. ("Dishman"), appeals a judgment awarding $46,500.00 to the plaintiff, Roscoe B. Smith ("Smith"). Dishman alleges the trial court erred in interpreting the oral contract as providing for payment of $200.00, instead of $100.00, per "12 hour day" for Smith's services as a swivel operator. Smith answers the appeal, contesting the trial court's failure to award penalties and attorney fees. We affirm.

Facts
Dishman is an oil field service company; it enters into contracts with oil field companies to supply labor and machinery. Dishman had previously entered into such a contract with Pursue Energy, an oil company, for a project in Mississippi. In order to carry out this job, a swivel operator was needed. Smith offered to provide swivel operator services for Dishman on this project and Dishman later contracted with him for this job. Unfortunately, the two parties never reduced their agreement as to Smith's compensation to writing; it remained oral.
Their agreement was for Smith to work for the duration of the project, which lasted approximately ten months. At the beginning of the project there were two swivel operators on the job, Smith and Greg Lilly; at this time Pursue paid Dishman $600.00 per day for its services for the two men. Soon after the project began, Lilly was reassigned to another job, and Pursue thereafter paid Dishman $400.00 per day for Smith's services. Dishman made monthly payments to Smith based on his working 437 "12-hour days," or $100.00 per day. Smith ultimately received $43,900.00 in compensation from Dishman.
Smith complained to Dishman, in several written letters, that he was supposed to receive $200.00 per day. McFarland testified he faxed these letters to Dishman in Houma. Nonetheless, Mr. Dishman refused to address the payment issue with Smith until after the project was completed in March 2000. Dishman steadily maintained that the contract was only for $100.00 per day.
On September 21, 2000, Smith filed the instant petition in Webster Parish, seeking "monies for earned wages" from Dishman. On October 31, 2000, the matter went to *1223 trial. Both sides agreed that Smith was entitled to receive a $300.00 per month automobile allowance for the 10 month period which he had not been paid. As noted, the amount agreed upon between the two parties is the crux of this dispute: Smith alleges he was to be paid $200.00 per "12 hour day;" Dishman alleges that it was $100.00 per "12-hour day."
In its written reasons for judgment, the trial court noted that Lilly, an employee for Dishman in 1999, had only 5 years of experience as a swivel operator; he worked as a swivel operator on the exact job in question. Mr. Lilly was paid $150.00 per "12-hour day" plus a base salary of $2,350.00 per month. After Lilly was transferred to another job site, Smith became the sole swivel operator on the job site for approximately 10 months. Smith, on the other hand, had 39 years of experience in the oil field. He was not only a trained swivel operator, but he was also an oil field consultant and "finishing tool" specialist. The court reasoned:
It does not appear logical that a relatively inexperienced salaried employee would receive $150.00 per 12-hour day together with a significant monthly salary, but that an experienced oil field consultant and specialist with 39 years of experience would receive only $100.00 per 12 hour day and no monthly salary to perform the same task.
Therefore, the trial court found that Smith had carried his burden and proved that, more likely than not, there had been an oral agreement whereby he was to receive $200.00 per "12-hour day" together with an automobile expense allowance for the Mississippi project. The trial court, however, did not award penalties and attorney fees. It found La. R.S. 23:631 et seq. to be inapplicable because its language "upon the discharge of any laborer" does not apply to Smith, who was not discharged by Dishman. The court rendered judgment for $46,500.00 against Dishman, apparently based on 437 contract days at $200.00, plus the stipulated automobile allowance of $3,000.00, for a total of $90,400.00, less the payments of $43,900 already rendered, for an amount due of $46,500.00. This appeal followed.

Discussion
In a suit to recover additional wages in excess of $500.00 under an oral contract of employment the basic rule governing proof is the second paragraph of La. C.C. art. 1846, which requires that plaintiff prove his case by one credible witness "and other corroborating circumstances." Fox v. Don Siebarth Pontiac, Inc., 458 So.2d 575 (La.App. 3 Cir.), writ denied, 461 So.2d 314 (1984); La. C.C. art. 1846. The plaintiff may be the one credible witness. Kilpatrick v. Kilpatrick, 27,241 (La.App. 2 Cir. 8/23/95), 660 So.2d 182, writ denied, 95-2579 (La.12/15/95), 664 So.2d 444; Samuels v. Firestone Tire & Rubber Co., 342 So.2d 661 (La.1977). "Other corroborating circumstances" need only be general in nature; independent proof of every detail of the agreement is not required. Id.; Miller v. Harvey, 408 So.2d 946 (La.App. 2 Cir.1981). Smith's testimony sufficed as the one credible witness. The sole issue is therefore whether he supplied the requisite "corroborating circumstances" required by art. 1846.
Additionally, an employer's failure to pay the full and proper compensation for services provided gives rise to an action for breach of contract for which the remedy is recovery of wages. Grabert v. Iberia Parish School Bd., 93-2715 (La.7/5/94), 638 So.2d 645.
Moreover, a court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Touchard v. Slemco *1224 Elec. Foundation, 99-3577 (La.10/17/00), 769 So.2d 1200; Blake v. Sportran Bus Co., 35,071 (La.App. 2 Cir. 10/2/01), 795 So.2d 1267. When there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review; the issue for the reviewing court is not whether the trier of fact was wrong, but whether the factfinder's conclusions were reasonable under the evidence. Touchard v. Slemco Elec. Foundation, supra. When a factfinder's determination is based on its discretion to credit the testimony of one of two or more witnesses, that finding can virtually never be wrong. Id.; Rosell v. ESCO, 549 So.2d 840 (La.1989); Blake v. Sportran Bus Co., supra. Since the trial court's determination as to the pay rate promised under the terms of the oral contract of employment is a finding of fact, we must determine whether that finding was reasonable.
Dishman argues that the trial court ignored "uncontradicted" testimony in evidence; based its decision on matters outside of the record; and drew improper inferences of fact. Specifically, Dishman asserts that the trial court failed to view the economic situation as a whole. If Smith were paid $200.00 per 12 hour day it would equate to $400.00 per actual 24 hour calendar day, or the full amount Dishman was billing Pursue; thus, under Smith's argument, Dishman would not receive any profit. Dishman maintains that no oil field service company would hire a swivel operator under an agreement to pay him 100% of what the oil field service company charged the principal.
We acknowledge that a lack of profit is certainly not a desired outcome for Dishman or any other oil field service company. However, certain attendant circumstances support Smith's version of the agreement by showing that his services should command $200.00 per 12-hour day. For example, Smith's project in Mississippi was a dangerous one. According to the testimony of both Smith and Ted McFarland, operators had to deal with hydrogen sulfide, imposing a potentially hazardous and precarious position upon the operators.[1]
Furthermore, Smith was an operator with 39 years of experience; he was a specialist in both fishing tool and swivel operations; he was also an oil field consultant. Greg Lilly, a much less experienced operator, received $150.00 per 12-hour shift in addition to a significant base salary. The trial court was certainly entitled to find that paying Smith, an experienced operator on a hazardous job, a contract rate of $8.33 per hour, was patently unreasonable. These circumstances strongly support Smith's version of the contract.
Additionally, Smith testified that at one time he was in the same business of providing oil field services like Dishman. He asserted that he would make a profit by supplying the tools, rather than the labor, to the oil company. He emphasized how difficult it was to make a profit off of the employee. Smith used his own tools and made most of his profit.
Dishman further argues that the trial court erred in overlooking the "uncontradicted" fact that Smith worked only a "12-hour shift" and not a "24-hour day." Every witness conceded that a salaried employee received 50% of what Dishman billed its client; however, every witness, except Mr. Dishman, maintained that there was no set standard for making an *1225 agreement with an independent contractor and that they were treated differently from salaried employees. Apparently, such a contractor gets whatever "deal" he can work out with the company.[2] The only two witnesses to this oral employment agreement were the plaintiff and the defendant. While Mr. McFarland, a former manager for Dishman's North Louisiana office, testified that he was present at a "generalized discussion" of Smith's employment agreement, he went on to state that he was not present at any final agreement reached between the two parties, and had no authority to make a binding agreement with Smith.
After weighing the testimony presented by the parties, the trial court found that there had in fact been an oral agreement to pay Smith $200.00 per "12 hour shift." We find such determination to be wholly reasonable and within its discretion.
Dishman urges the term "per day" refers to a 24-hour day. However, on direct examination, Mr. Gerald Dishman repeatedly stated that his company charged for a "12-hour day." In fact, Mr. Dishman admitted that when Smith was initially hired, he and Mr. Lilly were scheduled to work "12-hour shifts." Conversely, Smith consistently referred to a "day" as being a 12-hour day. Mr. Lilly testified, "Every 12 hours, you started your new work day." Mr. Lilly also testified that he counts his days when he is working on a rig, "every 12 to 24 hours." Furthermore, Mr. McFarland testified that there were two different rates; when talking about "per day," some referred to 12 hour days, while others referred to 24-hour days.
Notably, Smith sent Dishman four letters contesting the payments being sent. Mr. McFarland testified he faxed each of these to Dishman's home office in Houma. Mr. Dishman acknowledged seeing Smith's letters concerning his pay rate; however, he admitted not only failing to respond to Smith, but never discussing the pay rate with Smith until after Smith had completed the job. Considering Smith was initially hired to work 12-hour shifts, and there was apparently no communication from Dishman that would change it to a 24-hour day pay rate, the trial court was entitled to find that the agreement remained on a 12-hour basis.
In sum, the trial court accepted Smith as a credible witness and found circumstances to corroborate his account of the agreement. Although the evidence was conflicting, the trial court was not plainly wrong to find the circumstances supported Smith's version. Considering the testimony and evidence in the record on appeal, we cannot say that the trial court's evaluations of credibility and inferences of fact were unreasonable. Dishman breached its employment contract with Smith; the proper remedy is the recovery of wages. Therefore, we do not find the trial court erred in its interpretation of the oral contract of employment and affirm its award of $46,500.00 to Smith.
By answer to appeal, Smith requests the trial court's award be increased to include penalties and attorney fees. He urges a plain reading of La. R.S. 23:631, et seq. While Smith cites no jurisprudence, he argues that he was an employee and was not paid within 15 days after the project ended. He urges that in accordance with La. R.S. 23:631, et seq., penalties in the amount of $18,000.00 should be awarded. Additionally, he demands reasonable attorney fees, citing La. R.S. *1226 23:632 and Beard v. Summit Institute for Pulmonary Medicine and Rehabilitation, Inc., 97-1784 (La.3/4/98), 707 So.2d 1233.
Payment of wages after the discharge or resignation of an employee is governed by La. R.S. 23:631A.[3] Failure to pay in accordance with this statute subjects the employer to penalty wages and reasonable attorney fees. R.S. 23:632. Because these statutes are penal in nature, they must be strictly construed. Boudreaux v. Hamilton Medical Group, Inc., 94-0879 (La.10/17/94), 644 So.2d 619; Webb v. Lagniappe Hospital Corp., 30,659 (La.App. 2 Cir. 6/24/98), 714 So.2d 901.
The trial court aptly noted, and we agree, that the penalty provisions are activated only by the discharge or resignation of a laborer or other employee. The instant contract was clearly one for the performance of a "specific enterprise." La. C.C. art. 2746. On March 22, 2000, Smith neither resigned nor was discharged; the specific enterprise was concluded, by its own terms. In these circumstances, the penalty wage statutes do not apply. Collins v. Joseph, 250 So.2d 796 (La.App. 4 Cir.1971); Franklin v. Ram, Inc., 576 So.2d 546 (La.App. 2 Cir.1991); see also, Kethley v. Draughon Business College, Inc., 535 So.2d 502 (La.App. 2 Cir.1988).
The trial court was not plainly wrong to deny the claim for penalty wages and attorney fees.

Conclusion
For the reasons expressed, judgment is affirmed. Costs are assessed equally to plaintiff and defendant.
AFFIRMED.
NOTES
[1] According to the testimony of Ted McFarland, Dishman had an operator, "out there that's under hydrogen sulfide up to 24 hours a day that can hardly stand up. His feet are swelled up where he can't get his boots off because he's been standing on that." (R.p. 115).
[2] As Mr. McFarland testified, "It's whatever the deal is for you. It varies with contract hands." (R.p.89)
[3] La. R.S. 23:631A(1)(a) provides:

"Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge."
La. R.S. 23:631A(1)(b) provides:
"Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or not later than fifteen days following the date of resignation, whichever occurs first."