910 So.2d 477 (2005)
N. Gene DICKERSON, Plaintiff-Appellee
v.
CAJUN COMMUNICATIONS OF TEXAS, INC., Defendant-Appellant.
No. 40,026-CA.
Court of Appeal of Louisiana, Second Circuit.
August 17, 2005.
*478 Lunn, Irion, Salley, Carlisle & Gardner, by Walter S. Salley, Shreveport, for Defendant-Appellant.
Harper Law Firm, by Jerald R. Harper, Shreveport, for Plaintiff-Appellee.
Before BROWN, GASKINS and PEATROSS, JJ.
GASKINS, J.
The defendant, Cajun Communications of Texas, Inc. ("Cajun"), appeals from an adverse judgment awarding the plaintiff, N. Gene Dickerson, severance pay, penalty wages and attorney fees. For the following reasons, we affirm.

FACTS
Cajun, whose president and chief stockholder is Roger Cavaness, owns radio stations in and around Alexandria, Louisiana. *479 The company's "flagship" station is KLAA, an FM country music station. In the fall of 2002, according to the Arbitron radio market report, KLAA had a 3.1 share, meaning that only 3.1 percent of radio listeners in the station's market listened to KLAA.
Early in 2003, a mutual friend introduced Cavaness to Dickerson, a broadcasting professional with over 40 years of experience in the radio business. Dickerson, who was working as a consultant in Shreveport at the time, had performed "turnarounds" on radio stations in the past during his management career. Cavaness and Dickerson began discussing the possibility of Dickerson's employment with Cajun with the goal of improving the ratings and sales performance of Cajun's stations.
Dickerson said that from "day one," he insisted that a severance package be a required part of the proposed employment contract. He explained:
Well, it's possible to go in, and . . . to move the dynamics of the radio station forward. And as you get them up to a point where you are beginning to see if you  some light at the end of the tunnel, you can be dismissed and sent on your way.
In the process of negotiating an employment agreement, Dickerson made three handwritten pages of notes for himself and included, in a section of his notes titled "Terms," a "90 day severance due any time during first year." Dickerson said that Cavaness agreed to this term during negotiations.
On or about March 20, 2003, Cavaness signed a letter of intent agreement directed to Dickerson containing numerous proposed terms of employment and delineating Dickerson's compensation package. The document defined itself as a letter of intent and specified that a formal agreement would follow within 30 days. Included in this agreement is this sentence:
During the first 6-9 months of association, Roger agrees to 90 days of compensation if he decides that he and Gene cannot work together, 4 months if after 12 months, 24 months, and 6 months [thereafter].
Dickerson moved to Alexandria and commenced working for Cajun in March 2003, earning $6,000.00 per month.
Subsequently, Cajun sent Dickerson a draft of a formal employment agreement containing the following paragraph:
During the first six (6) to nine (9) months of association, EMPLOYER agrees to ninety (90) days of compensation; four (4) months of compensation if after twelve (12) to twenty-four (24) months, and six (6) months of compensation after twenty-four (24) months, if the EMPLOYER decides that the employment relationship is not appropriate.
Cavaness had used a pen to mark through the first word  "during"  and wrote in the word "after" in its place. Cavaness testified that this was in accord with his interpretation of the March 20 letter of intent that severance pay would be due only upon termination after the first six months of employment. Dickerson said that he never agreed to this term. Dickerson further testified that he would not have gone to work for Cajun in the absence of an agreement that the severance pay was effective upon employment. Dickerson never signed the formal employment agreement.
According to the Arbitron ratings for Spring 2003, KLAA increased its market share to 7.2, a substantial increase in the station's performance in the market since the fall report. Dickerson said that the station was now number one in the measured target audience. However, Cavaness fired Dickerson in the early summer, approximately three months after Dickerson *480 started work. According to Cavaness, Cajun terminated Dickerson because advertising sales dropped off sharply and two important station employees left after Dickerson commenced work. Cavaness further asserted that all Cajun employees worked for the company on a 90-day trial basis, but no such agreement appears in any of the documents supplied as exhibits. Dickerson said that his firing came after "difficult discussions" in which the men were unable to resolve Dickerson's concerns over Cajun's wage and billing practices which Dickerson perceived to be irregular.
In the fall of 2003, Dickerson sued Cajun; he sought 90 days' severance pay, penalties, and attorney fees. A bench trial was held in September 2004; both Dickerson and Cavaness testified. The court ruled in favor of Dickerson. The court specifically found Dickerson to be a credible witness. The court further found that the parties had confected a broad employment agreement that included the severance provision and that the circumstances of the situation, particularly the requirement that Dickerson move from Shreveport to Alexandria, tended to corroborate Dickerson's version of events. The judge also found that because the severance pay agreement was part of the terms of employment, Cajun owed Dickerson penalty wages. The judge awarded Dickerson three months' worth of salary or $18,000.00, penalty wages of $18,000.00, and $3,500.00 in attorney fees. Cajun now appeals.

SEVERANCE PAY
Cajun asserts that the trial court was clearly wrong in awarding severance pay to Dickerson. Cajun argues that the parties intended for severance pay to become applicable only after a trial period.
Since this issue involves factual determinations, our review is guided by the mandate that an appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Consequently, where there is a conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appeal. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Dickerson's testimony, which was accepted by the trial court, established that severance pay was a crucial issue to him. His three-page handwritten notes corroborated this. The letter of intent typed and signed by Cavaness on behalf of Cajun provided for Dickerson to receive severance pay. This document, which declared itself to be "an agreement" between Cajun and Dickerson, further stated that Dickerson was to receive 90 days of compensation if he was terminated by Cavaness during the first six to nine months.[1] Dickerson testified that he would not have come to work for Cajun had it not so provided.
Although the letter of intent states that a "formal agreement" would follow within 30 days of the beginning of the parties' association, we do not believe that this demonstrates an intent to be bound only by a subsequent document under La. C.C. art.1947. Cavaness, Cajun's CEO, agreed to the severance terms during the initial negotiation. As previously noted, Cavaness *481 not only wrote the letter of intent but also signed it, thereby demonstrating Cajun's consent. Dickerson went to work for Cajun under the terms of the letter of intent, thereby signifying his intent to be bound by its terms. Therefore, both parties manifested consent pursuant to La. C.C. art.1927, and a binding written contract existed between them.

PENALTY WAGES
Cajun also contends that the trial court erred in awarding penalty wages and attorney's fees pursuant to La. R.S. 23:632.
La. R.S. 23:631 provides, in part:
A. (1)(a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.
La. R.S. 23:632 provides:
Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.
In order for the employee to recover penalty wages, the employer must be found to have acted in an arbitrary or unreasonable manner. Robinson v. Apria Healthcare, Inc., 38,438 (La.App.2d Cir.5/27/04), 874 So.2d 418. Only "a good-faith, non-arbitrary defense to liability for unpaid wages, i.e., a reasonable basis for resisting liability" permits a court to excuse the employer from the imposition of penalty wages. Keiser v. Catholic Diocese of Shreveport, Inc., 38,797 (La.App.2d Cir.8/18/04), 880 So.2d 230, citing Carriere v. Pee Wee's Equipment Company, 364 So.2d 555 (La.1978).
Cajun contends that the trial court erred by awarding penalty wages in the absence of an explicit finding that Cajun acted arbitrarily in refusing to give Dickerson his severance pay. Cajun urges that the trial court's finding that the severance pay agreement was part of the terms of employment was insufficient. We believe that the court's finding that Cajun was arbitrary is implicit in its decision to credit Dickerson's testimony. The dispute in this case was whether the parties reached an agreement concerning severance pay commencing with the first day of employment. Dickerson testified that the parties had reached such an agreement but that Cajun had refused to honor it. In finding Dickerson's testimony credible, the court necessarily found that Cajun knew and agreed to the severance payments. Because the record as a whole supports the trial court's findings, they will not be disturbed on appeal. We affirm the award of penalty wages.
Reasonable attorney fees are to be awarded in the event that the plaintiff files a well-founded suit for unpaid wages, even if penalty wages are not due. Moore v. Fleming Subway Restaurants, Inc., 28,543 *482 (La.App.2d Cir.8/21/96), 680 So.2d 78. Because the wage claim was well-founded, the trial court correctly awarded attorney fees to Dickerson.

CONCLUSION
The judgment of the trial court is affirmed. Costs are assessed against the appellant, Cajun Communications of Texas, Inc.
AFFIRMED.
NOTES
[1] This aspect of the letter of intent is not ambiguous. However, even if it were, it is well-settled that any ambiguity in a contract is to be construed against the party who prepared the contract. Kenner Industries, Inc. v. Sewell Plastics, Inc., 451 So.2d 557 (La.1984); Potvin v. Wright's Sound Gallery, Inc., 568 So.2d 623 (La.App. 2d Cir.1990). See also La. C.C. Art.2056.