*198
 
 BROWN, Chief Judge.
 

 | Appellant, Robert L. Pierce, Jr., appeals both the trial court’s granting of a declaratory judgment in favor of appellees, Red River International, Inc., and U.S. Transcon, Inc., and the trial court’s rejection of his reconventional demand. For the following reasons, we affirm.
 

 Facts and Procedural Background
 

 Red River International, Inc., and U.S. Transcon, Inc. (hereinafter “Red River”), provide trucking and transportation services. Robert L. Pierce, Jr. (hereinafter “Pierce”), who has been employed in the transportation industry for many years, served as the International Director of Transportation for Johns Manville. In late 2004, Pierce negotiated a “dedicated agreement” on behalf of Johns Manville with Red River for the transportation of building materials from Etowah, Tennessee to Ennis, Texas. Representing Red River in these negotiations was Mike Bishop, a Red River employee and Pierce’s longtime friend.
 
 [1]
 
 On December 10, 2004, a final written agreement was signed by Pierce, on behalf of Johns Manville, and Clay Crenshaw, a co-owner of Red River. The executed agreement’s start date was January 17, 2005, and it was to be in effect for two years.
 

 At issue in this case, and at great variance between the parties, is what transpired after the December 10, 2004, execution of the “dedicated agreement.”
 

 According to Pierce’s testimony, he resigned from Johns Manville on December 31, 2004, and shortly thereafter Bishop called him and informed him that the deal with Johns Manville “fell through,” and that Bishop |2wanted him to “rekindle” it by representing Red River. In agreeing to represent Red River in its negotiations with Johns Manville, Pierce testified that Bishop informed him that if he successfully revived the deal he would be compensated with a brokerage fee of $10,000 a month for the 24-month life of the contract. Pierce further stated that he met with Johns Manville at the beginning of January 2005, and after a period of about a week he was able to get the deal revived.
 

 Bishop testified next, and according to his testimony sometime in late December 2004 or early January 2005, Pierce informed him that “there was no contract.” Bishop asserted that as a result of this, and with the approval of Ken Shaw, Red River’s other co-owner, he asked Pierce to represent Red River in negotiations with Johns Manville. Bishop further stated that he had no further communications with Johns Manville regarding the deal, and that at the end of the second week of January 2005 Pierce informed him that Red River had gotten the contract.
 

 The last to testify was Shaw. According to Shaw the original December 10, 2004, contract and a March 28, 2005, revision of the original contract, which specifically stated that it was a revision of the December 10, 2004, dedicated agreement, were the only contracts pertaining to the Eto-wah deal executed between Red River and Johns Manville. Shaw further testified that he brought Pierce on as a consultant in the latter part of 2005, paid him $10,000 a month, and due to Pierce’s inability to bring in any new business he terminated his services nine months later.
 

 laThis action ensued as a result of Red River’s cessation of payments to Pierce. On December 22, 2006, Red River filed a declaratory judgment action, requesting a declaration that an oral agreement between it and Pierce was for general consulting services and subject to termination at any time. In response, Pierce filed a
 
 *199
 
 reconventional demand seeking a declaratory judgment from the trial court decreeing that the parties entered into an oral brokerage agreement, the terms of which provided that he would be paid the full sum of $240,000 upon the procurement of the transportation agreement with Johns Manville.
 
 [2]
 

 In addition to the testimony of the three witnesses, the following documents were submitted into evidence: 1) the December 10, 2004, executed dedicated agreement; 2) an unexecuted January 20, 2005, addendum to the December 10, 2004, dedicated agreement; 3) the March 28, 2005, revised dedicated agreement and intermodal service agreement; 4) a driver roster with listed hire dates as early as January 10, 2005; 5) Johns Manville’s first quarter dedicated report which shows that trucks began their pickups on January 21, 2005; 6) e-mails between the parties and witnesses; and 7) documents pertaining to Pierce Logistics, L.L.C. After hearing the testimony of the three witnesses and reviewing the submitted documentation, the trial court determined that the documentary evidence supported Red River’s position, and, as such, it believed that Pierce and Red |4River had entered into a consulting fee arrangement which was subject to termination at the will of Red River.
 

 Discussion
 

 The existence or nonexistence of a contract is a question of fact, and the finder of fact’s determination may not be set aside unless it is clearly wrong.
 
 Crowe v. Homesplus Manufactured Housing, Inc.,
 
 38,382 (La.App. 2d Cir.06/21/04), 877 So.2d 156. Furthermore, when there is a conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed if the factfinder’s conclusions were reasonable under the evidence.
 
 Smith v. Dishman & Bennett Speciality Co.,
 
 35,682 (La.App. 2d Cir.01/23/02), 805 So.2d 1220. A factfin-der’s decision that is based on its discretion to credit the testimony of one of two or more witnesses can virtually never be wrong.
 
 Id.
 

 To enforce an oral agreement pertaining to something priced or valued in excess of $500, the contract must be proved by at least one witness and other corroborating circumstances. La. C.C. art. 1846. A party to the action may be a credible witness, and the other corroborating circumstances need only be general in nature.
 
 Smith v. Dishman & Bennett Speciality Co., supra.
 

 Pierce argues that the evidence presented at trial overwhelmingly established proof of his oral brokerage agreement, and conversely, that Red River failed to offer any evidence to support the existence of a consulting agreement. Specifically, Pierce asserts that in addition to his own testimony, the fully corroborative testimony of Red River’s former |semployee, Mike Bishop, established the existence of the brokerage agreement. The trial court’s finding otherwise, Pierce posits, was manifestly erroneous.
 

 In response to Pierce’s claim that it failed to put forth any evidence to support the existence of a consulting agreement, Red River contends that since it was not attempting to prove the existence of a contract with any remaining value, it was not necessary for it to put forth any “corroborating circumstances.” Nevertheless, Red River argues that the documentation it submitted did in fact provide corroborat
 
 *200
 
 ing circumstances from which the trial court correctly found that the parties had entered into a consulting arrangement. Red River also asserts that since La. C.C. art. 1846 requires “at least one witness,” and “other corroborating circumstances” in addition to witness testimony, Bishop’s testimony did not constitute a “circumstance.” Thus, Red River argues, since Pierce was unable to provide any extrinsic evidence to support the existence of a brokerage agreement, the trial court’s finding of fact should be upheld.
 

 As previously noted, if the trial court’s conclusion in this matter was reasonable in light of the evidence, we may not reverse its judgment. In its reasons for judgment, the trial court listed the following reasons to support its findings: the March 28, 2005, revised dedicated agreement stated that it was a revision of the December 10, 2004, dedicated agreement; the words “broker” or “brokerage fees” never appear in any of the submitted documents; a lack of sufficient evidence to support Bishop’s authority to enter into a brokerage agreement with Pierce on behalf of Red River; the | namount Pierce claimed was due by him was more than the profit margin Red River stood to make; trucks began operating in mid-January 2005, which lent weight to Red River’s argument that the December 10, 2004, dedicated agreement was still in effect; the submitted e-mails, one of which stated “consulting services,” supported Red River’s position; and, due to Bishop’s close friendship and continued working relationship with Pierce, it was apparent that he was not an “independent” witness.
 

 Considering the trial court’s aforementioned reasons for judgment, along with a thorough reading of the record, we cannot say that the trial court was clearly wrong in its determinations. Although there were corroborating circumstances to support both parties’ contentions, the trial court was clearly within its discretion to credit the testimony of Shaw over that of Pierce and Bishop. Therefore, the trial court’s holding that Pierce and Red River entered into a consulting fee arrangement which could be terminated at will is affirmed.
 

 Conclusion
 

 For the reasons expressed herein, the judgment of the trial court is affirmed. Costs are assessed to appellant, Robert L. Pierce, Jr.
 

 [1]
 

 . Bishop resigned from Red River effective December 23, 2005.
 

 [2]
 

 . In Red River’s original petition seeking a declaratory judgment only Pierce was named as a defendant. In Pierce's reconventional demand, however, Pierce Logistics, L.L.C., was named as a plaintiff-in-reconvention.