880 So.2d 230 (2004)
Margaret KEISER, Plaintiff-Appellee
v.
CATHOLIC DIOCESE OF SHREVEPORT, INC., Defendant-Appellant.
No. 38,797-CA.
Court of Appeal of Louisiana, Second Circuit.
August 18, 2004.
*232 Cook, Yancey, King & Galloway by Bernard S. Johnson, Shreveport, for Appellant.
Keiser, Auzenne & Boudreaux, L.L.C. by Randall B. Keiser, Alexandria, for Appellee.
Before BROWN, STEWART and DREW, JJ.
DREW, J.
Appellant, Catholic Diocese of Shreveport, Inc., d/b/a Our Lady of Fatima School, seeks review of the trial court's judgment awarding Margaret Keiser unpaid wages in the amount of $2,069.81, sick leave pay of $108.09, plus penalty wages and attorney fees. For the reasons assigned below, the judgment of the trial court is amended in part and affirmed as amended.

FACTS
Just prior to the start of the 2002-2003 school year, Margaret Keiser took a job with Our Lady of Fatima School in Monroe, Louisiana, to teach its pre-kindergarten program. On August 12, 2002, she signed a one-year contract of employment commencing that day and ending on July 31, 2003. Keiser was to earn a yearly salary of $21,193.00 to be paid in bi-monthly installments. The contract further provided that full-time staff members are entitled to ten sick days with pay per year.
Paragraph 14 of the teacher contract contained the following stipulated damages clause:
In the event that the teacher fails to fulfill the obligations set forth in this agreement prior to the effective termination date then in such event the teacher shall, ipso facto, be deemed to have breached this agreement. The school shall be entitled to recover such damages as it may have incurred as a result of such breach, including but not limited to, costs and expenses in the hiring of substitute and/or replacement teacher(s), or other incidental damages. Alternatively, at the sole option of the school, the school shall be entitled to recover from the teacher the sum of $2,500.00 as stipulated damages, which sum the teacher agrees to pay as damages if the school chooses this alternative.
Both Keiser and the school's principal, Sherry Fontana, acknowledged that at the time the contract was signed, Keiser inquired about the above-quoted provision and was assured by Fontana that the provision had never been enforced.
Keiser received a total of four paychecks on these dates in 2002: August 30, September 13, September 30, and October 15, each for gross pay of $921.43, or a total of $3,685.72. On October 9, 2002, Keiser gave to Fontana a letter of resignation effective October 25, 2002, since she had taken another teaching position with the Ouachita Parish School Board (OPSB). On October 25, 2002, Keiser worked her last day at the school.
The parties stipulated that the gross wages which Keiser had not been paid were $2,602.56 and the net (after governmental withholding) wages were $2,069.81. The evidence also established that Keiser was supposed to work a total of 182 seven-hour days at a daily gross rate of $116.45.
On November 1, 2002, Keiser went to the school and met with Fontana regarding her unpaid wages. At their meeting, Fontana took a check from a folder and indicated to Keiser that it was her last paycheck. However, the principal told Keiser she would have to endorse it back over to the school for payment of the stipulated damages reflected in the contract. *233 The meeting was witnessed by the school's bookkeeper, Maria Pipes. All parties admit that the check was not actually delivered to Keiser, who did not agree to endorse the check back over to the school. When Keiser departed, Fontana replaced the check in the folder from which she had taken it.
On November 5, 2002, Keiser called Fontana to inquire again about her unpaid wages. Fontana indicated that she would not reconsider her position and that Keiser would have to take legal action to pursue the matter any further. On the same date, Fontana executed a form for the Ouachita Parish School Board entitled "Verification of Teaching Experience and Sick Leave," indicating that Keiser had earned 2.5 days of sick leave and used one, leaving her with a balance of 1.5 sick leave days. The form was apparently solicited by the OPSB, Keiser's new employer.
On November 6, 2002, Keiser mailed a certified letter to Fontana making a written request for her unpaid wages, or in the alternative, a written statement regarding the amount of wages being withheld. Fontana did not respond to the request.
On April 16, 2003, Keiser filed a rule requesting that the Diocese be ordered to show cause why judgment should not be rendered against it and in favor of Keiser for all past due wages plus statutory penalties and attorney fees under La. R.S. 23:632. The matter was heard on September 23, 2003, after which the trial court took the matter under advisement.
On November 13, 2003, the court issued its reasons for judgment finding that the plaintiff was entitled to $2,069.81 in unpaid wages, $108.13 for accrued unused sick leave, 90 days of wages totaling $10,480.50, and attorney fees in the amount of $3,000.00. A judgment to this effect was signed on December 8, 2003. The Diocese appealed.

LAW
La. R.S. 23:631 provided at the time, in pertinent part:
A(1)(b) Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of resignation, whichever occurs first.
* * *
B. In the event of a dispute as to the amount due under this Section, the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section. The employee shall have the right to file an action to enforce such a wage claim and proceed pursuant to Code of Civil Procedure Article 2592.
La. R.S. 23:632 provides:
Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the *234 first demand following discharge or resignation.
La. R.S. 23:634(A) provides:
No person, acting either for himself or as agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed; but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation.

DISCUSSION
On appeal, the Diocese contended the trial court erred in:
 concluding that the provision in the teacher's contract for stipulated damages in the event of Keiser's breach was a "forfeiture of wages" provision and, therefore, against public policy; and,
 awarding past due wages, penalty wages, and attorney fees by failing to apply the principle of compensation to extinguish the school's debt for unpaid wages.
In answering the appeal, Keiser assigns error to the trial court's:
 refusal to admit her W-2 into evidence, and
 award of compensation for only 6.5 hours of sick leave.
She also requests additional attorney fees relative to this appeal.

Sick Leave
The issue is whether, on the basis of the evidence presented, Keiser proved that she was due more than 6.5 hours in sick leave as of the date of her resignation. We find that she did, based upon the school's own documentation. However, Keiser's assertion that she is due the entire ten days of sick leave (less the sick leave actually used) is patently unreasonable. The evidence showed she had used one full day plus half an hour of another day as sick leave. To award almost nine days of unused sick leave would be an unconscionable windfall and contrary to all common sense and contractual interpretation. Her entitlement to sick leave is based upon what portion of the contractual term she actually worked.
The only evidence in this sparse record on the issue of sick leave is the teacher's contract, which states that all full-time staff members are entitled to ten days of sick leave with pay per year. The principal's testimony on sick leave accrual and the OPSB form executed by the school's principal showed that Keiser was entitled to 1.5 days of sick leave as of the date of her resignation.
The burden to prove wages due and accumulated sick days was Keiser's. After thoroughly reviewing the record and examining the entirety of the testimony and documentary evidence, we conclude that Keiser had worked 30% of the school year (the 54 days Keiser worked from August until October 25, divided by 182 work days in the school year). Accordingly, she was entitled to 30% of the ten days of sick leave provided for in her contract, or three days. Based upon seven-hour workdays, Keiser had earned a total of 21 hours of sick leave, of which she had used 7.5 hours. Thus she was entitled to 13.5 hours of sick leave (in contrast to the 6.5 hours awarded by the trial court) as of the effective date of her resignation. At the rate of $16.64 per hour, Keiser was entitled to $224.64 in compensable sick leave (as opposed to the $108.13 awarded by the trial court).

Stipulated Damages Clause and Compensation
To recover penalty wages, the claimant must show that (1) wages were *235 due and owing, (2) demand for payment thereof was made where the employee was customarily paid, and (3) the employer did not pay upon demand. Winkle v. Advance Products & Systems, 98-694 (La.App. 3d Cir.10/28/98), 721 So.2d 983. A trial court's findings of fact with regard to whether the plaintiff is entitled to penalty wages cannot be reversed on appeal in the absence of manifest error. Loup v. Louisiana State School for the Deaf, 98-0329 (La.App. 1st Cir.2/19/99), 729 So.2d 689.
Keiser satisfied her burden of proof under La. R.S. 23:632 and established her entitlement to penalty wages. She proved that (1) the school owed her wages at the time of her resignation, (2) she made written demand upon the school at its customary place of business, which is where she was customarily paid, and (3) the school did not pay upon demand.
The next issue is whether the school proved an equitable defense to their liability for the unpaid wages. A claim for penalty wages under La. R.S. 23:632 may be defeated by an equitable defense. Beard v. Summit Institute for Pulmonary Medicine and Rehabilitation, Inc., 97-1784 (La.3/4/98), 707 So.2d 1233. However, it is only "a good-faith, non-arbitrary defense to liability for unpaid wages, i.e., a reasonable basis for resisting liability" which permits a court to excuse the employer from the imposition of penalty wages. Carriere v. Pee Wee's Equipment Company, 364 So.2d 555 (La.1978).
An employer's reliance on an unlawful company policy does not constitute a good faith, non-arbitrary defense to liability for unpaid wages under La. R.S. 23:632. Beard, supra. Louisiana courts have recognized that an employer's claim of setoff, or compensation, constitutes an equitable defense to a penalty wage claim. See Richard v. Vidrine Automotive Services, Inc., 98-1020 (La.App. 1st Cir.4/1/99), 729 So.2d 1174; Brown v. Navarre Chevrolet, Inc., 610 So.2d 165 (La.App. 3d Cir.1992); and Demery v. Cook, 525 So.2d 157 (La.App. 3d Cir.1988). In the present case, the school claims it is not liable for penalty wages because its debt was extinguished by a setoff of Keiser's debt for the stipulated damages of $2,500.00 set forth in the teacher's contract.
Legal compensation takes place when two persons owe each other sums of money or quantities of fungible things identical in kind, and these sums or quantities are liquidated and presently due. La. C.C. art. 1983. It is only applicable when two distinct debts, equally liquidated and demandable, exist contemporaneously. Hill Wholesale Distributing Co., Inc. v. Louis W. Howat & Son, 27,936 (La.App.2d Cir.1/24/96), 666 So.2d 1252. One who asserts compensation necessarily admits the debt sued upon. Hill, supra, citing Tolbird v. Cooper, 243 La. 306, 143 So.2d 80 (1962). As the party claiming compensation as an affirmative defense, the Diocese had the burden of proving the extinguishment of the debt for unpaid wages. Winkle, supra.
The Diocese is unable to show extinguishment of the debt. The parties stipulated that Keiser's gross unpaid wages at the time of her resignation amounted to $2,602.56.[1] All this money actually belonged *236 to her, not the government, at least until her taxes were finally computed the next year.
The record further reveals that Keiser was also entitled to $224.64 in compensable unused sick leave. Therefore, at the time of her resignation, Keiser was owed $2,827.20 in unpaid wages. Even if the $2,500.00 in stipulated damages could have been appropriately taken by the Diocese as a setoff of her obligation to them, Keiser would still have been owed $327.20.
Because the Diocese was obligated to tender any undisputed amount, the trial court did not err in finding that a violation of La. R.S. 23:631 occurred. The trial court properly assessed penalty wages and attorney fees against the Diocese.
The only question remaining is whether the Diocese was entitled to setoff for the stipulated damages as provided in Keiser's contract. As noted above, the jurisprudence is clear that compensation is a defense to a penalty wage claim. The Diocese was only entitled to the setoff if the trial court erred in its conclusion that the stipulated damage clause is the equivalent of a forfeiture of wages provision and, therefore, against public policy. Beard, supra. The trial court properly found that the stipulated damages clause was the equivalent to a prohibited forfeiture of wages.
While stipulated damage clauses are provided for in La. C.C. art. 2005, et seq., they should reasonably approximate the obligee's loss in the event of a breach and should not be penal. American Leasing Company of Monroe, Inc. v. Lannon E. Miller & Son, General Contracting, Inc., 469 So.2d 325 (La.App. 2d Cir.1985). To determine the reasonableness, the court should inquire as to whether the parties attempted to approximate the actual damages in confecting the agreement. Carney v. Boles, 25,905 (La.App.2d Cir.9/21/94), 643 So.2d 339. In reviewing the entire record, it is clear that the stipulated damage clause in the teacher's contract is not enforceable.
Both Keiser and Fontana's testimony reflects that the stipulated damage clause does not reflect an attempt by the parties to approximate the actual damages which might be suffered by the school in the event Keiser left her employment early. To the contrary, the evidence establishes that the clause was part of the school's standard teacher contract. Furthermore, when Keiser expressed concern about the clause, she was informed that the clause had never been enforced against any other employees.
In addition to the admission that the clause does not reflect an attempt to approximate the actual damages, the record is devoid of any evidence regarding actual damages suffered. While Fontana testified that she had to hire a substitute for five weeks until Keiser's teacher's aide was hired as the permanent replacement, there was no indication that the substitute made more or even the equivalent of what the school would have paid Keiser during the same time period.
We find under the circumstances of this particular case that the $2,500.00 stipulated damage clause, more than Keiser made in a month, is unenforceable as a de facto forfeiture of wages clause expressly prohibited under La. R.S. 23:631. Accordingly, we find no error in the trial court's refusal to give the clause any effect.

Louisiana Civil Code Article 2750
The Diocese also argues that the trial court erred in failing to apply the provisions of La. C.C. art. 2750 to find that *237 Keiser was not entitled to her unpaid wages. It provides:
But if, on the other hand, a laborer, after having hired out his services, should leave his employer before the time of his engagement has expired, without having any just cause of complaint against his employer, the laborer shall then forfeit all the wages that may be due to him, and shall moreover be compelled to repay all the money he has received, either as due for his wages, or in advance thereof on the running year or on the time of his engagement.
As suggested by the introductory language to the article, this provision is an extension of the preceding article, La. C.C. art. 2749, which provides as follows:
If, without any serious ground of complaint, a man should send away a laborer whose services he has hired for a certain time, before that time has expired, he shall be bound to pay to such laborer the whole of the salaries which he would have been entitled to receive, had the full term of his services arrived.
An editor's note to this article indicates that the English translation from the French text is incomplete and omits the phrase "as said in the foregoing article" following the phrase "for a certain time." Accordingly, the applicability of Articles 2749 and 2750 may have been intended to be limited by the provisions of La. C.C. art. 2748, which reads:
Laborers, who hire themselves out to serve on plantations or to work in manufactures, have not the right of leaving the person who has hired them, nor can they be sent away by the proprietor, until the time has expired during which they had agreed to serve, unless good and just causes can be assigned.
Keiser is not a laborer hired out to work on either a plantation or in manufacturing. Therefore, to the extent this article's applicability was intended to be limited to such employees, the trial court did not err in failing to apply it to the facts herein. Nevertheless, to the extent the provisions of this article might be in conflict with La. R.S. 23:634, we agree with the position set forth in Litvinoff, The Law of Obligations, § 14.29, Forfeiture of Salaries Problem and Solution, 6 Louisiana Civil Law Treatise (1999), on the present viability of La. C.C. article 2750:
One century later, by special act, the Louisiana Legislature provided that employees shall not enter into contracts by which they shall forfeit their wages if they are discharged or if they resign their employment before expiration of the contractual term, and that in every such cases [sic] the employee shall be entitled to the wage actually earned up to the time of his discharge or resignation. Without having been expressly repealed, the article of the Louisiana Civil Code that provided to the contrary had thus been deprived of effect.
We hold that the present case is controlled by provisions of La. R.S. 23:634 and that the provisions of La. C.C. art. 2750 are not applicable.

Exclusion of Keiser's W-2
Keiser's assignment of error that the trial court erred in excluding her W-2 from evidence is moot. Keiser argues that the W-2 is evidence that Keiser never in fact received payment for her unpaid wages. The parties admitted Keiser did not receive wages. Any error in this regard was harmless.

Additional Attorney Fees
We find that $1,250.00 will adequately compensate counsel for defending and pursuing this appeal.

CONCLUSION
The trial court's judgment is hereby amended to increase the award for sick *238 leave pay from $108.09 to $224.64. In addition, additional attorney fees in the amount of $1,250.00 are assessed against Catholic Diocese of Shreveport, Inc. The judgment is affirmed in all other respects. All costs of this appeal shall be borne by the Diocese.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] While the trial court only awarded Keiser the net (after withholding) wages of $2,069.81, Keiser was actually entitled to the gross amount of her unpaid wages. As Keiser did not assign error to this ruling in its answer to the appeal, we must decline to amend the judgment in this regard. In argument, Keiser's attorney stated that the W-2 form that Keiser received from the Diocese showed that she had been compensated in full and that Keiser had paid taxes based upon the W-2.