975 So.2d 143 (2008)
Louellen SMITH, Plaintiff-Appellee,
v.
ACADIANA MORTGAGE OF LOUISIANA, INC., Defendant-Appellant.
No. 42,795-CA.
Court of Appeal of Louisiana, Second Circuit.
January 30, 2008.
*145 Robin S. Harvill, Bossier City, Jennifer W. Hilburn, Shreveport, for Appellant.
Walter D. White, Shreveport, for Appellee.
Before BROWN, WILLIAMS and LOLLEY, JJ.
WILLIAMS, J.
Plaintiff, Louellen Smith, filed a petition against defendant, Acadiana Mortgage of Louisiana, Inc. ("Acadiana Mortgage"), seeking unpaid wages, penalties and attorney fees pursuant to LSA-R.S. 23:631, 632. Following a trial, the court ruled in favor of plaintiff, finding that Acadiana Mortgage owed plaintiff $755.60 in past due wages. The trial court also found that Acadiana Mortgage arbitrarily and unreasonably failed to pay plaintiff and awarded penalty wages in the amount of $115.36 per day for a period of 90 days ($10,382.40) and attorney fees in the sum of $4,000. For the following reasons, we affirm the trial court's judgment.

FACTS
Plaintiff, Louellen Smith, was employed by Acadiana Mortgage as a mortgage processor from February 20-March 10, 2006. She was terminated on March 10, 2006.
Kara Lowrie, Acadiana Mortgage's owner/operator, testified that she and other office employees observed plaintiff talking on her cellular telephone "a lot." However, Lowrie stated that she "was willing to *146 give [plaintiff] a lot of extra latitude" because plaintiff was trying to sell her house in another city and purchase another house locally. Lowrie also testified that she noticed that plaintiff was not performing her job duties, but she took into consideration plaintiff's status as a new employee. Lowrie stated that she expected plaintiff to "hit the ground running" because of plaintiff's lengthy experience in the mortgage business. Lowrie also stated that she attempted to gauge plaintiff's strengths and weaknesses and she checked in with her "several times a day" to see if plaintiff was experiencing any problems.
On February 28, 2006, Lowrie met with plaintiff to review job expectations. During the meeting, plaintiff expressed no concerns or questions with regard to her responsibilities or Lowrie's expectations. According to Lowrie, on March 6, 2006, she met with plaintiff again "to get to the bottom of her problem [and] to figure out again if there was something I could do to get her back on track. . . ." Lowrie asked plaintiff if she wanted to continue to work for the company, and plaintiff assured her that she did and that she would "work on it." Lowrie testified that plaintiff did not change her behavior after the meeting. Lowrie later discovered that plaintiff had been conducting a large amount of personal activity on her work computer, including sending personal e-mails within minutes of her prior counseling meetings.
Lowrie testified that a senior loan processor with plaintiff's experience should have been able to process 30-40 loans at one time. However, plaintiff did not process any loans during her employment with Acadiana Mortgage.
Sabrina Lonadier, Lowrie's executive assistant, testified that the office was "really busy" and there was "plenty to do" during the time plaintiff worked there. However, plaintiff was not completing her duties because of personal telephone calls and e-mails. Lonadier also testified that Lowrie had instructed employees to come to her for additional work if they did not have enough to do, but plaintiff never asked for additional work.
Carla Durfee, Acadiana Mortgage's office manager, testified that she noticed that plaintiff spent the majority of her time viewing items on the internet, sending and responding to personal e-mails and engaging in "many, many personal phone calls." Durfee also testified that she had observed plaintiff taking breaks without clocking out.
Christine Shifflett, another employee, testified that she had observed plaintiff making personal telephone calls during work hours. Shifflet also stated that employees had adequate work to do "most of the time," and employees had been instructed to request additional work if they did not have enough to do. Shifflett testified that she had observed plaintiff requesting additional work.
Plaintiff testified that she had been in the mortgage business for approximately 15 years prior to her employment with Acadiana Mortgage, but she had no experience processing and closing loans. She stated that her prior experience primarily consisted of auditing and mortgage loan underwriting. Plaintiff also stated that she was not given any work to do for the first three days of her employment with Acadiana Mortgage, despite her repeated requests for work. She testified that she utilized her time at work talking to other employees and browsing the internet "out of sheer boredom." Plaintiff stated that she worked on selling her house when she "had nothing else to do," and she would not have been conducting personal business on company time if she had work to do.
*147 Plaintiff admitted to using the internet during work hours. She testified that she accessed various web sites to assist her in performing her job duties because she had never processed or underwritten Federal Housing Administration or Veteran Affairs loans. Plaintiff stated that she sought internet assistance to familiarize herself with the guidelines pertinent to those types of loans. Plaintiff's cell phone records showed that she had used 18 minutes of airtime during work hours over the three weeks that she was employed by Acadiana Mortgage.
Plaintiff testified that the door was locked when she arrived to work on March 10, 2006. She stated that she noticed vehicles in the parking lot and saw employees inside the building, but no one answered the door when she knocked. Plaintiff testified that Durfee eventually unlocked the door and informed her that Lowrie wanted plaintiff to wait in the lobby until Lowrie arrived. When Lowrie arrived, plaintiff was escorted to Lowrie's office and terminated. Plaintiff testified that Lowrie asked, "[I]f you had to say how many days you have actually worked since you have been here, what would you say?" Plaintiff responded, "[B]ased on what you have given me to do, [a] day, day and a half."
At the conclusion of plaintiff's employment, her time records reflected a total of 67.50 hours worked from February 27-March 10, 2006. Plaintiff's hourly wage was $14.42. Lowrie determined that plaintiff's time cards did not accurately reflect the number of hours she had actually worked, so she prepared plaintiff's final paycheck by subtracting four hours per day for every day plaintiff had worked. Lowrie adjusted plaintiff's time records and compensated her for 15.10 hours, which included 1.85 hours for sick/personal leave that plaintiff had taken. Thus, Lowrie paid plaintiff $217.75, rather than $973.35.
On April 10, 2006, plaintiff made a written demand for unpaid wages. When Acadiana Mortgage failed to respond, on May 3, 2006, plaintiff filed a petition for unpaid wages, penalties and attorney fees. Following a trial, the trial court ruled in favor of plaintiff, finding that Acadiana Mortgage owed plaintiff $755.60 in past due wages. The trial court also found that Acadiana Mortgage arbitrarily and unreasonably failed to pay plaintiff and, pursuant to LSA-R.S. 23:632, awarded penalty wages in the amount of $115.36 per day for a period of 90 days ($10,382.40) and attorney fees in the sum of $4,000. This appeal followed.

DISCUSSION
Unpaid Wages
Acadiana Mortgage contends the award of past due wages was not supported by the evidence. It argues that plaintiff admitted she had not worked a full day since her first day of employment and her wages were adjusted accordingly.
LSA-R.S. 23:631(A)(1)(a) provides:
Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.
It shall be the duty of each employer to inform his employees at the time of hire what wages they will be paid, the method in which they will be paid and the frequency of payment along with any subsequent changes thereto. LSA-R.S. 23:633.
*148 In the instant case, it is undisputed that plaintiff was an "at-will" employee, pursuant to LSA-C.C. art. 2747.[1] It is also undisputed that plaintiff was an hourly employee, earning $14.42 per hour. According to plaintiff's time card, she was present for work 67.5 hours during the February 27-March 10, 2006 pay period. Acadiana Mortgage determined that plaintiff had only "worked" 15.10 hours during that pay period and deducted sums from plaintiff's pay without notice.
In finding in favor of plaintiff, the trial court stated:
Essentially, Defendant's position was that any and every employer is free to observe the literal "sweat of the brow" before computing wages and then adjust hourly compensation accordingly. Although there was evidence in this case which established Smith was in fact conducting some personal business on company time, the Court finds the chosen recourse of the Defendant unacceptable under Louisiana law. Defendant's contention that the spirit of [LSA-R.S.] 23:631 provides a tool for employers to avoid liability for wages that were not "earned" in the literal sense of the word is nonsensical. Our State provides a powerful remedy for the dissatisfied employer: the employment-at-will doctrine. Our State does not provide, however, that such an employer may continue to benefit from the presence of an employee, fail to properly supervise and adequately assign the employee, then unilaterally violate the terms and conditions of employment by adjusting the employee's pay as the employer sees fit.
We agree with the trial court. Plaintiff was present and available to work for 67.5 hours during the relevant time period. Plaintiff stated during the exit interview and at trial that the amount of work she completed was based on the amount of work Lowrie assigned to her. As noted above, the terms of plaintiff's employment dictated that she was to be paid according to the hours worked, not according to the number of assignments or loan applications completed. Lowrie testified that she observed plaintiff not working and performing personal tasks during work hours, yet she did little to correct plaintiff's actions. Plaintiff was not assigned additional work, and there was no indication that Lowrie demanded completed loan applications from plaintiff. In fact, Lowrie made multiple excuses for plaintiff's lack of performance and she admitted that she was willing to give plaintiff "a lot of extra latitude." As the trial court pointed out, Lowrie's remedy for plaintiff's actions is clearly set forth in the employment-at-will doctrine. It would be grossly unfair to allow an employer to unilaterally determine the amount of time an employee has actually spent "working," then calculate wages based on that determination. Therefore, we affirm the trial court's determination that plaintiff was entitled to wages for the full 67.5 hours recorded on her time card. This assignment is without merit.
Penalty Wages
Acadiana Mortgage also contends the trial court was manifestly erroneous in concluding that plaintiff was entitled to penalty wages. Acadiana Mortgage denies that it acted in bad faith; therefore, the payment of penalty wages was not justified.
A trial court's findings of fact with regard to whether a plaintiff is entitled to *149 penalty wages cannot be reversed on appeal in the absence of manifest error or unless clearly wrong. Keiser v. Catholic Diocese of Shreveport, Inc., 38,797 (La. App.2d Cir.8/18/04), 880 So.2d 230; Loup v. Louisiana State School for the Deaf, 98-0329 (La.App. 1st Cir.2/19/99), 729 So.2d 689.
The two-part test for the appellate review of a factual finding is: (1) whether there is a reasonable factual basis in the record for the finding of the trial court; and (2) whether the record further establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120 (La.1987). Thus, if there is no reasonable factual basis in the record for the trial court's finding, no additional inquiry is necessary. However, if a reasonable factual basis exists, an appellate court may set aside a trial court's factual finding only if, after reviewing the record in its entirety, it determines the trial court's finding was clearly wrong. See, Stobart v. State, Dept. of Transp. & Dev., 617 So.2d 880 (La.1993).
LSA-R.S. 23:632 provides, in pertinent part:
Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. . . .
In order to recover penalty wages and attorney fees under LSA-R.S. 23:632, the claimant must show that (1) wages were due and owing; (2) demand for payment was made where the employee was customarily paid; and (3) the employer failed to pay upon demand. Becht v. Morgan Bldg. & Spas, Inc., 2002-2047 (La.4/23/03), 843 So.2d 1109; Keiser, supra.
An employee is entitled to recover penalty wages if he or she proves that the employer acted in an arbitrary or unreasonable manner. Dickerson v. Cajun Communications of Texas, Inc., 40,026 (La.App.2d Cir.8/17/05), 910 So.2d 477; Robinson v. Apria Healthcare, Inc., 38,438 (La.App.2d Cir.5/27/04), 874 So.2d 418. Penalty wages are penal in nature and must be strictly construed. Boudreaux v. Hamilton Medical Group, Inc., 94-0879 (La.10/17/94), 644 So.2d 619; Robinson, supra. LSA-R.S. 23:632 was designed to compel prompt payment of wages upon an employee's discharge or resignation. Id.
In the instant case, for the reasons set forth above, we find that plaintiff satisfied her burden of proof under LSA-R.S. 23:632. She proved that (1) Acadiana Mortgage owed her wages at the time of her termination; (2) she made written demand upon Acadiana Mortgage by certified mail at its customary place of business, which is where she was customarily paid; and (3) Acadiana Mortgage failed to pay upon demand.
We do not find that the trial court was clearly wrong in concluding that Acadiana Mortgage's actions were arbitrary or unreasonable. Thus, Acadiana Mortgage was required to prove an equitable defense to its liability for unpaid wages.
A claim for penalty wages under LSA-R.S. 23:632 may be defeated by an equitable defense. Beard v. Summit Institute for Pulmonary Medicine and Rehabilitation, Inc., 97-1784 (La.3/4/98), 707 So.2d 1233; Keiser, supra. However, it is only "a good-faith, non-arbitrary defense to liability for unpaid wages, i.e., a reasonable basis for resisting liability," *150 which permits a court to excuse the employer from the imposition of penalty wages. Carriere v. PeeWee's Equipment Co., 364 So.2d 555 (La.1978); Keiser, supra.
An employer's reliance on an unlawful company policy does not constitute a good faith, non-arbitrary defense to liability for unpaid wages under LSA-R.S. 23:632. Beard, supra; Keiser, supra. However, Louisiana courts have recognized that an employer's claim of setoff, or compensation, constitutes an equitable defense to a penalty wage claim. See Richard v. Vidrine Automotive Services, Inc., 98-1020 (La.App. 1st Cir.4/1/99), 729 So.2d 1174; Brown v. Navarre Chevrolet, Inc., 610 So.2d 165 (La.App. 3d Cir.1992); Demery v. Cook, 525 So.2d 157 (La.App. 3d Cir.1988).
In the present case, Acadiana Mortgage argues that it was entitled to "offset" plaintiff's wages pursuant to LSA-R.S. 23:635, which provides:
No person, acting either for himself or as agent or otherwise, shall assess any fines against his employees or deduct any sum as fines from their wages. This Section shall not apply in cases where the employees wilfully or negligently damage goods or works, or in cases where the employees wilfully or negligently damage or break the property of the employer, or in cases where the employee is convicted or has pled guilty to the crime of theft of employer funds, but in such cases the fines shall not exceed the actual damage done.
We must point out that Acadiana Mortgage has never contended that plaintiff damaged its goods or property or was convicted of theft of its funds. Rather, Acadiana Mortgage maintains that it was permissible to reduce plaintiff's wages based upon her statement that she had not worked a full day since her first day of employment.
The language of LSA-R.S. 23:635 is clear: "No person, acting either for himself or as agent or otherwise, shall assess any fines against his employees or deduct any sum as fines from their wages." (Emphasis added). There is no statutory provision which allows an employer to unilaterally reduce the amount of wages owed an employee, absent the specific exceptions contained within Section 23:635. As the trial court so eloquently stated, "Our State does not provide, however, that such an employer may continue to benefit from the presence of an employee, fail to properly supervise and adequately assign the employee, then unilaterally violate the terms and conditions of employment by adjusting the employee's pay as the employer sees fit."
Lowrie did not inform plaintiff during the exit interview that her pay would be "adjusted" based on her statements; she decided to do so after the interview. On the bottom of plaintiff's final direct deposit voucher, Lowrie made the following handwritten notation: "Paycheck has been adjusted based on our exit interview and you informing me and Carla Durfee you have `barely worked a half-day since you started.'" We must yield to the trial court's reasonable credibility evaluations and reasonable factual inferences in its finding that Lowrie's actions were arbitrary and Acadiana Mortgage did not possess the good faith necessary to preclude the imposition of penalty wages.
Based on the foregoing, we find that plaintiff met her burden of proving that she was entitled to unpaid wages, and Acadiana Mortgage failed to prove an equitable defense to its liability for the unpaid wages. Accordingly, we affirm the award of penalty wages. This argument is without merit.
*151 Attorney Fees
Acadiana Mortgage also contends the attorney fees awarded were excessive. It argues that the record does not support the award of $4,000 in attorney fees.
In employee payment cases, attorney fees are allowable under LSA-R.S. 23:632, which provides, in pertinent part:
Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.
An award of attorney fees must be reasonable, based upon the degree of skill and work involved in the case, the number of court appearances, the depositions, and the office work involved. Linoski v. Fleetwood Homes of Texas, # 12, 38,338 (La.App.2d Cir.5/12/04), 873 So.2d 886; Gaston v. Bobby Johnson Equipment Co., Inc., 34,028 (La.App.2d Cir.11/3/00), 771 So.2d 848. Where the record does not detail the time and costs of an attorney's services, a court may nonetheless fix the fee from the record. Mitchell v. Turner, 588 So.2d 1305 (La.App. 2d Cir.1991); James, Robinson, Felts & Starnes v. Powell, 303 So.2d 229 (La.App. 2d Cir.1974).
The factors to be taken into consideration in determining the reasonableness of attorney fees are as follows: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances involved; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge. State, Dept. of Transp. & Dev. v. Williamson, 597 So.2d 439 (La.1992).[2]
The trial court is vested with considerable discretion in setting attorney fees and will not be disturbed absent an abuse of that discretion. Louisiana Safety Ass'n of Timbermen Self Insurers Fund v. Courtney Const. Co. of Alexandria, Inc., 41,564 (La.App.2d Cir.12/13/06), 949 So.2d 490; Minsky v. Shumate, 40,375 (La. App.2d Cir.3/10/06), 924 So.2d 488.
In the instant case, the following exchange took place:
THE COURT: [N]ow let's talk about attorney's fees here.

*152 [PLAINTIFF'S COUNSEL]: Yes, sir. I can only estimate. We've been up here one time before, Your Honor. There's a brief. I would estimate twenty hours and that's off the top of my head.
THE COURT: Okay, and what do you charge an hour?
[PLAINTIFF'S COUNSEL]: Two hundred.
THE COURT: That's what four thousand, isn't it?
[PLAINTIFF'S COUNSEL]: Yes, sir.
THE COURT: I think it's worth that. . . .
While no contract for legal services was introduced into evidence, plaintiff's counsel stated on the record his hourly rate and the hours he had expended preparing for and trying the case. Counsel's work in this case resulted in an award of over $11,000 in favor of his client; preparing and carrying the case through trial entailed great responsibility by counsel, and counsel's presentation of the case reflected the effort, skill and knowledge required of him. The case was tried in one day; however, the volumes of exhibits and the length of the trial are just a small reflection of the time required for preparation of the matter for trial. The facts of the case were not complicated, but the evidence to establish plaintiff's claim required investigation, diligence and skill of counsel. Moreover, handling the case on this appeal required additional legal work.
In Barrilleaux v. Franklin Foundation Hosp., 96-0343 (La.App. 1st Cir.11/8/96), 683 So.2d 348, writ denied, 96-2885 (La.1/24/97), 686 So.2d 864, the plaintiff, who had resigned her employment, filed suit against her employer for compensation due. The court awarded the plaintiff attorney fees in the amount of $4,643.75. The court denied the plaintiff's request for additional attorney fees for the work performed on appeal, finding that an increase was not warranted because the amount awarded in the trial court was sufficient to compensate counsel.
In Kern v. River City Ford, Inc., 98-0407 (La.App. 1st Cir.2/19/99), 754 So.2d 978, a former employee filed suit against an employer seeking unpaid wages. The plaintiff's counsel submitted into evidence a bill, requesting attorney fees in the amount of $1,883.25. The court awarded $2,000 in attorney fees for work performed through the trial, and an additional $1,500 for work performed on appeal.
Considering the factors set forth in Williamson, supra, as well as the cases cited above, we find that the award of $4,000 in attorney fees was not an abuse of the trial court's discretion. Accordingly, we affirm the trial court's decision in this regard.

CONCLUSION
For the foregoing reasons, the trial court's judgment is hereby affirmed. Costs of this appeal are to be borne by defendant/appellant, Acadiana Mortgage.
AFFIRMED.
NOTES
[1] LSA-C.C. art. 2747 provides:

A man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for so doing. The servant is also free to depart without assigning any cause.
[2] These factors are derived from Rule 1.5(a) of the Rules of Professional Conduct, which provides:

(a) A lawyer's fees shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) The fee customarily charged in the locality for similar legal services;
(4) The amount involved and the results obtained;
(5) The time limitations imposed by the client or by the circumstances;
(6) The nature and length of the professional relationship with the client;
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) Whether the fee is fixed or contingent.