MOORE, J.
 

 _JjThis appeal comes from the Ruston City Court, Lincoln Parish, the Honorable Danny W. Tatum presiding. The dispute in this case arose out of Ruston Neuropsy-chiatric Hospital’s failure to timely pay the plaintiff, Mary F. Hattaway, accrued vacation pay after she was terminated from her employment. Ms. Hattaway ultimately sued the hospital for the vacation pay, statutory penalties and attorney fees, and for payment of dental expenses that she became personally liable for in the month after her termination as a result of the hospital’s wrongful cancellation of her dental insurance. The trial court ruled in Ms. Hattaway’s favor for the past due vacation pay, attorney fees and dental expenses, but declined to award the statutory penalty for failure to timely pay wages due. The plaintiff now appeals that part of the judgment failing to award the statutory penalty, and the hospital answered the appeal contending that the trial court erred in awarding the dental expenses and attorney fees. After review, we amend the judgment of the trial court to award the statutory penalties and additional attorney fees, and, as amended, we affirm.
 

 FACTS
 

 The plaintiff, Mary Hattaway, was terminated on March 26, 2008, after three years employment with Ruston Neuropsy-chiatric Hospital. She received her final
 
 *1178
 
 paycheck on the normal payday for the last period she worked. This paycheck showed accrued vacation time of 4.44 hours. Plaintiffs hourly wage was $13. The plaintiff testified that she immediately told her supervisor that she did not receive her vacation pay in her paycheck and a dental insurance premium of $16.55 was taken out of her check.
 

 |2Ms. Hattaway said that she subsequently spoke several times with her supervisor, Patricia Perry, and Renee Reynolds, the administrator, regarding the matter. She said that Ms. Reynolds told her that Ms. Vandenberg, wife of Dr. Van-denberg (the owner of the hospital) and who ran the office said that the plaintiff had nothing coming.
 

 Ms. Hattaway also learned that her insurance was cancelled on March 30, 2008, even though the premiums deducted from her last two paychecks were for the following month.
 

 The payroll at the hospital was handled Ms. Vandenberg. She acknowledged that the hospital had a written policy that accrued vacation time would be paid upon an employee’s termination or resignation. Ms. Vandenberg testified that she was not initially informed that the plaintiff had been terminated or resigned when she issued what turned out to be the final paycheck for regular wages, and this was the reason why her payroll program deducted the insurance premium and did not pay wages for the accrued vacation. When she learned that the plaintiff was not working at the hospital, Ms. Vandenberg said that she assumed it was due to illness because the plaintiff had a history of taking sick leave. When she received a demand letter for vacation pay and the insurance premium on August 21, 2008, Ms. Vandenberg said she issued a check to the plaintiff for $115.04 on September 10, 2008, which plaintiff received on September 12, 2008, the same day she filed suit.
 

 Plaintiff rejected the $115.04 check, now claiming that the defendant owed her for 26.6 hours of vacation pay and for dental expenses she |sincurred because she believed she still had dental insurance after she was terminated, but the hospital had cancelled it. Plaintiff and her attorney had calculated the 26.6 hours of accrued vacation based upon their own formula and paycheck stubs some time before suit was filed.
 

 Ms. Vandenberg sent Ms. Hattaway a new check for $379.84, representing the new amount demanded and refund for the insurance premiums. She testified that she decided to send the amount of wages demanded simply to put the matter to rest. She explained the discrepancy between her calculations of vacation time accrued (4.44 hours) and the plaintiffs personal calculation as resulting from the plaintiffs incorrect formula and failure to deduct excess sick time she took from vacation time.
 

 However, now that the suit had been filed, the plaintiff rejected the tender, instead demanding the statutory penalty wages, attorney fees, and complete payment of her dental expenses in the amount of $741.
 

 Among several stipulations before trial, the hospital stipulated that it owed the plaintiff 20 hours of vacation pay. The court awarded the plaintiff the 20 hours of wages at $13 per hour ($260). Additionally, it awarded plaintiff $741 in dental expenses that she incurred during the month after her termination because the company cancelled her dental insurance even though it had deducted dental coverage from her last paycheck which would have covered the period and did not offer her a COBRA plan to continue her insurance, and $1,500 in attorney fees.
 

 
 *1179
 
 The plaintiff filed this appeal arguing that she is entitled to the statutory penalty for failure to pay wages due, which amounts to 90 days | ,,pay at the employer’s regular rate. In this case, that amount is $9,360.
 

 The hospital filed an answer to the appeal contending that the $1,500 in attorney fees were excessive and unwarranted and the $741 in dental expenses were not warranted whereas Ms. Hattaway never contacted Ms. Vandenberg regarding continuation of her insurance under a COBRA plan.
 

 DISCUSSION
 

 The point of contention on appeal is the trial court’s denial of the statutory penalty of 90 days pay on equitable grounds. These matters are governed by statute.
 

 La. R.S. 23:631 reads, in pertinent part: A.(l)(a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.
 

 [[Image here]]
 

 (2) Payment shall be made at the place and in the manner which has been customary during the employment, except that payment may be made via United States mail to the laborer or other employee, provided postage has been prepaid and the envelope properly addressed with the employee’s or laborer’s current address as shown in the employer’s records. In the event payment is made by mail the employer shall be deemed to have made such payment when it is mailed. The timeliness of the mailing may be shown by an official United States postmark or other official documentation from the United States Postal Service.
 

 B. In the event of a dispute as to the amount due under this Section, the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section. The employee shall have the right to file an action to enforce such a wage claim and proceed pursuant to Code of Civil Procedure Article 2592.
 

 * *
 

 D. (1) For purposes of this Section, vacation pay will be considered an amount then due only if, in accordance with the stated vacation policy of the person employing such laborer or other employee, both of the following apply:
 

 (a) The laborer or other employee is deemed eligible for and has accrued the right to take vacation time with pay.
 

 (b) The laborer or other employee has not taken or been compensated for the vacation time as of the date of the discharge or resignation.
 

 (2) The provisions of this Subsection shall not be interpreted to allow the forfeiture of any vacation pay actually earned by an employee pursuant to the employer’s policy.
 

 The penalties for failure to comply with La. R.S. 23:631 are provided for in La. R.S. 23:632, which reads:
 

 Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee’s daily rate of pay, or else for full wages from the time the employee’s demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penal
 
 *1180
 
 ty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.
 

 In this instance, the trial judge refused to award the vacation/wage penalties, stating that “the court is not convinced that the defendant’s actions were in bad faith, arbitrary or so unreasonable under the circumstances to trigger the penal wage provisions.” It said that it came to this conclusion based upon (1) the employer’s actions once the appropriate ^authorities were informed; (2) what the employer’s records showed; (3) the lack of an established pi-actice for calculation of vacation pay other than a Quicken pi’o-gram; (4) the lack of a specific demand by the plaintiff; and, (5) the good faith tenders by the defendant to achieve resolution of the matter.
 

 We conclude that the trial court committed legal error in failing to impose the 90-day wage penalty required by the statute. Although there are some cases that hold, that a trial court has some discretion in awai’ding penalties and attorney fees under the statute, it is clear from the statute that it is the failure to comply with the provisions of La. R.S. 23:631, not a finding of bad faith, that triggers the penalty provision of La. R.S. 23:632. It is essentially undisputed that (1) wages wei-e due and owing; (2) Ms. Hattaway made oral demand to her supervisor whei'e she was customarily paid; and, (3) the hospital did not pay upon demand.
 
 Keiser v. Catholic Diocese of Shreveport, Inc.,
 
 880 So.2d 230 (La.App. 2 Cir.2004).
 

 “It is only a good faith, non-arbitrary defense to liability for unpaid wages, i.e.,
 
 a reasonable basis for resisting liability,
 
 which pei'mits a court to excuse the employer from the imposition of penalty wages.”
 
 Keiser, supra
 
 at 235. Thus, if the amount owed to the employee is subject to a bona fide (good faith) dispute, the court will not consider the failure to pay as arbitrary and will refuse to award penalties.
 
 Blaney v. Hulsey, Harwood & Hulsey,
 
 27,983 (La.App.2 Cir. 2/28/96), 669 So.2d 661.
 

 In this case, however, the defendant did not actually dispute that Ms. Hattaway was owed vacation pay; that is to say, there was no bona fide dispute that the hospital owed Ms. Hattaway at least some amount of |7vacation pay. Ms. Vanden-berg alleged that the cause of her failure to timely pay the wages due was a poor computer accounting system, lack of communication from Ms. Hattaway’s supervi-soi', lack of a demand from Ms. Hattaway for a specific amount due, and other misunderstandings and confusions. Be that as it may, these reasons do not absolve the defendant from liability under the penalty provision. Even her own payroll records showed that she owed the plaintiff at least 4.44 hours of vacation pay. Yet, she did not timely pay this amount as required by section B of the statute. It was only five months later, after a written demand letter was sent to hex', that she sent the first check for $115.04.
 

 For these reasons, we amend the judgment of the frial court to award the statutory penalty of 90 days pay at $13 per hour, which comes to $9,360. We also reject the defendant’s answer to the appeal and award additional attorney fees of $500. In all other respects, the judgment of the trial court is affirmed at defendant’s cost.
 

 AFFIRMED AS AMENDED.