729 So.2d 1174 (1999)
Sherry RICHARD
v.
VIDRINE AUTOMOTIVE SERVICES, INC.
No. 98 CA 1020.
Court of Appeal of Louisiana, First Circuit.
April 1, 1999.
*1175 Stan R. Aaron, Baton Rouge, Counsel for Plaintiff/Appellant Sherry Richard.
Jack K. Whitehead, Jr., Baton Rouge, Counsel for Defendant/Appellee Vidrine Automotive Services, Inc.
Before: GONZALES, WHIPPLE and FOGG, JJ.
GONZALES, J.
This action is a suit for unpaid wages, penalty wages, and attorney fees brought pursuant to La. R.S. 23:631 et seq. The trial court signed a judgment in favor of the employer, Vidrine Automotive Services, Inc. (Vidrine), finding Vidrine properly deducted the balance due on a loan made to a discharged employee, Sherry Richard, from her final paycheck. Ms. Richard appeals from this adverse judgment.

FACTUAL AND PROCEDURAL BACKGROUND
Ms. Richard was employed by Vidrine from September 1, 1993 through July 1, 1997. In February of 1996, Ms. Richard borrowed $3,000.00 from Vidrine to buy a car and was repaying the borrowed amount, plus 16% interest, by weekly deductions of $33.75 from her paycheck. On July 1, 1997, Ms. Richard's employment was terminated and she was given a final paycheck; however, from the $1,080.00 in final wages due Ms. Richard, Vidrine deducted $968.58, representing the balance allegedly due by Ms. Richard on her loan. On July 24, 1997, Ms. Richard wrote a letter to Greg Vidrine, the owner of Vidrine, requesting payment of the $968.58 withheld from her final paycheck. In the letter, Ms. Richard stated, "We had agreed that you take $33.75 out of my check per week for money that was borrowed. You never discussed payment in full when job was renindered (sic). Please submit[] amount that was taken out of my check." Vidrine did not pay the withheld amount.
On September 25, 1997, Ms. Richard filed a "Rule to Show Cause Why Employer Should Not Be Ordered to Pay Wages, Penalty Wages, and Attorney's Fee to Former Employee." Vidrine filed an "Answer to Rule Nisi," admitting Ms. Richard was owed wages upon her termination, but claiming the right to deduct the balance due on the $3,000.00 loan under the affirmative defense of compensation. Vidrine also asserted as an affirmative defense that a company policy existed whereby Vidrine employees "upon leaving the company for whatever reason, are required to pay off all of their obligations due to the company from their final wages, and that the company has regularly and consistently enforced this policy." Vidrine alleged Ms. Richard was aware of this company policy.
The trial court held a hearing on this matter on October 15, 1997. Ms. Richard testified regarding the circumstances surrounding the $3,000.00 loan Vidrine made to her. According to Ms. Richard, she borrowed the money to purchase a car. Although not reduced to writing, Ms. Richard contended she and Vidrine had an agreement whereby she would repay the $3,000.00 plus 16% interest over a two-year period by weekly deductions of $33.75 from her paycheck. Ms. Richard testified she was never told that, in the event her employment with Vidrine was terminated, she would have to pay back the entire balance of the loan upon termination. Ms. Richard admitted she was a bookkeeper for part of the time she was employed by Vidrine and was aware of and assisted in administering a company policy whereby money borrowed by or any advance *1176 made to a Vidrine employee was deducted from his paychecks. Regarding employees who owed Vidrine money and whose employment terminated, Ms. Richard admitted that all amounts due Vidrine would be deducted from the departing employee's final paycheck. However, Ms. Richard testified that her loan from Vidrine was "different" because she and Mr. Vidrine had an agreement that she would re-pay the amount borrowed over a two-year period, and there was no agreement that she would have to pay the entire loan off if her employment terminated.
Greg Vidrine, the owner of Vidrine, also testified at the hearing. According to Mr. Vidrine, the company policy was to allow certain employees to purchase items, such as tires or automotive parts, or borrow money from Vidrine, and to then have the employee re-pay the amount owed or borrowed by regular deductions from his paycheck. Mr. Vidrine stated that, while Ms. Richard was Vidrine's bookkeeper, it was her responsibility to keep track of the amounts owed by each employee and to communicate these amounts to the company which prepared Vidrine's payroll. Mr. Vidrine testified that the company loaned Ms. Vidrine $3,000.00 because he was trying to help her obtain the money she needed quickly. He charged her 16% interest on the loan because this was the rate of interest Ms. Richard would have been charged by the bank she consulted regarding the loan. He worked out a loan payment schedule with Ms. Richard of $33.75 per week for two years and gave her a copy of the schedule. Mr. Vidrine conceded that he did not "directly" tell Ms. Richard that she would have to pay the loan balance in full if her employment were terminated but testified that he did not tell her because, in her position as former bookkeeper for Vidrine, she "understood" that such repayment in full would be required.
Three additional witnesses, including two Vidrine employees and a bookkeeper formerly involved in preparing Vidrine's payroll, testified as to the existence of Vidrine's policy to allow employees to buy items or borrow money from the company and to then pay back the money owed by payroll deduction. Further, all three witnesses stated that any amount owed by an employee whose employment ended was deducted from the employee's final paycheck.
At the conclusion of the hearing, the trial court determined Vidrine had not violated La. R.S. 23:631 and was not liable to Ms. Richard for wages, penalty wages, and attorney fees. In oral reasons for judgment, the trial court determined that Vidrine's policy of collecting any money owed by an employee leaving employment by deducting the full amount owed from the employee's last paycheck was a reasonable policy. On December 17, 1997, the trial court signed a judgment, dismissing Ms. Richard's claim against Vidrine.
Ms. Richard appeals from this adverse judgment, claiming the trial court erred in not finding a violation of La. R.S. 23:631 for three reasons: (1) Vidrine was not entitled to deduct any money from Ms. Richard's paycheck under the theory of setoff because Ms. Richard did not owe the full balance of the loan at the time of her termination, (2) even if Vidrine was entitled to setoff the amount due under the loan, it deducted too much because it charged a usurious interest rate, and (3) even if Vidrine was entitled to setoff the amount due under the loan at a rate of 16% interest, it still violated the provisions of La. R.S. 23:631 by failing to withhold federal income taxes from Ms. Richard's final check and failing to pay those taxes to the Internal Revenue Service on her behalf.[1]

PAYMENT OF WAGES UPON TERMINATION OF EMPLOYMENT
Upon the discharge of any employee, an employer has a duty to pay the amount then due under the terms of employment not later than three days following the date of discharge. La. R.S. 23:631(A)(1)(a).[2] Any employer *1177 who fails or refuses to comply with the provisions of La. R.S. 23:631 shall be liable to the employee either for (1) ninety days wages at the employee's daily rate of pay, or (2) full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. La. R.S. 23:632.[3]
To recover penalty wages, the claimant must show that (1) wages were due and owing; (2) demand for payment thereof was made where the employee was customarily paid; and (3) the employer did not pay upon demand. Winkle v. Advance Products & Systems, 98-694 (La.App. 3d Cir.10/28/98), 721 So.2d 983, 990. The record reveals Ms. Richard satisfied her burden of proof under La. R.S. 23:632, thereby initially establishing her entitlement to penalty wages. She has proven Vidrine owed her wages at the time of her termination, that she made written demand upon Mr. Vidrine at Vidrine's customary place of business, which is where she was customarily paid, and Vidrine did not pay upon demand. The next issue is whether Vidrine has proven an equitable defense for resisting liability for unpaid wages.

VIDRINE'S ENTITLEMENT TO SETOFF THE BALANCE OF MS. RICHARD'S DEBT AGAINST HER FINAL PAYMENT OF WAGES
A claim for penalty wages under La. R.S. 23:632 may be defeated by an equitable defense. Beard v. Summit Institute for Pulmonary Medicine and Rehabilitation, Inc., 97-1784 (La.3/4/98), 707 So.2d 1233, 1236; Henderson v. Kentwood Spring Water, *1178 Inc., 583 So.2d 1227, 1232 (La.App. 1 Cir. 1991). However, it is only "a good-faith, non-arbitrary defense to liability for unpaid wages, i.e., a reasonable basis for resisting liability" which permits a court to excuse the employer from the imposition of penalty wages. Carriere v. Pee Wee's Equipment Company, 364 So.2d 555, 557 (La.1978); Henderson, 583 So.2d at 1232. Louisiana courts have recognized that an employer's claim of setoff, or compensation, constitutes an equitable defense to a penalty wage claim. This situation may arise when, for instance, the employer seeks setoffs against wages based on damage caused by the employee, Colbert v. Mike-Baker Brick Company of New Iberia, Inc., 326 So.2d 900 (La.App. 3d Cir.1976), overruled in part on other grounds, 364 So.2d 555, 556 (La.1978); or for lost equipment, uniforms, and overpayment from a previous paycheck, Henderson, 583 So.2d at 1230; or on advances made to the employee, Doucet v. Plantation Manor, Inc., 382 So.2d 984 (La.App. 1st Cir.1980); or for overpayment of wages to an employee who had not worked scheduled holidays prior to discharge, Pinion v. Union Carbide Corporation, 490 So.2d 479, 482 (La.App. 4 Cir.1986); or for the balance on an employee's revolving charge account with her employer, Brown v. Navarre Chevrolet, Inc., 610 So.2d 165, 171 (La.App. 3d Cir.1992); or because property of the employer is allegedly being improperly retained by the employee, Carriere, 364 So.2d at 557; Landry v. Pauli's Inc., 496 So.2d 431, 434 (La.App. 5 Cir.1986), writ denied, 500 So.2d 428 (La.1987).
In the present case, Vidrine claims it is not liable for penalty wages because it was entitled to setoff Ms. Richard's loan debt against the amount owed her in final wages. Louisiana statutory law and jurisprudence recognize three kinds of setoff, or to use the codal term, compensation: legal, which is effected by operation of law, La. C.C. art. 1893;[4] contractual, which is effected by the will of the parties, La. C.C. art.1901;[5] and, judicial, which is effected by the courts, La. C.C. art.1902.[6]Fidelity & Deposit Company of Maryland v. Cloy Construction Company, Inc. 463 So.2d 1365, 1368 (La.App. 1 Cir. 1984), writ denied, 465 So.2d 723 (La.1985), citing Tolbird v. Cooper, 243 La. 306, 143 So.2d 80 (La.1962).
In this case, the trial court determined Vidrine had a reasonable policy of collecting debts owed by departing employees by deduction from the employee's final paycheck. We conclude this constitutes a factual finding that Ms. Richard entered into an agreement with Vidrine, amounting to contractual compensation under La. C.C. art. 1901, whereby any wages owed to her upon the termination of her employment would be setoff by any amount she owed to Vidrine.[7]See Henderson, 583 So.2d at 1231. Although there is a dispute as to the enforceability of the policy as it applied to Ms. Richard's loan, the trial court apparently did not find credible Ms. Richard's claim that her loan was "different" and was to be paid back over a two-year period irrespective of her employment *1179 status at Vidrine. This manner of repayment as alleged by Ms. Richard was unlike every other instance when a departing employee owed Vidrine money and was required to pay that money by deduction from his final paycheck. This factual determination by the trial court was based on its determination of the credibility of the witnesses, and there was a reasonable basis for this finding. Thus, we find no manifest error in the trial court's implicit determination that contractual compensation under La. C.C. art. 1901 occurred in this case. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993).
The next issue is whether Vidrine carried its burden of proving the amount to which it was entitled to setoff. A party claiming setoff, or compensation, as an affirmative defense has the burden of proving his claim. Winkle, 721 So.2d at 989. Vidrine has carried its burden of proving its entitlement to setoff Ms. Richard's loan debt against her final payment of wages. However, Vidrine incorrectly calculated the amount of setoff to which it was entitled.
Under La. R.S. 23:691,[8] no person shall lend or advance money to any one of his employees at a greater rate of interest than 8% per annum. It is undisputed Vidrine was Ms. Richard's employer and that its loan to her was at a rate of 16% per annum. Therefore, under La. R.S. 23:691, the 16% interest rate is usurious and unenforceable. Further, according to La. R.S. 9:3501,[9] any contract for the payment of interest in excess of that authorized by law shall result in the forfeiture of the entire interest so contracted. Therefore, because Vidrine contracted with Ms. Richard for the payment of interest greater than the upper limit of 8% allowed by La. R.S. 23:691, it is required, under La. R.S. 9:3501, to forfeit the entire interest collected from her.
The record indicates Ms. Richard made 72 payments of $33.75 to Vidrine through payroll deductions from February 23, 1996 through June 25, 1997. This amounts to total payments of $2,430.00. Because Vidrine has forfeited its right to collect interest from Ms. Richard, her total payments must be applied to the principal balance of $3,000.00. Therefore, the amount Vidrine was entitled to setoff against Ms. Richard's final paycheck was $570.00, the difference between $3,000.00 and $2,430.00. The amount Vidrine actually setoff was $968.58. Thus, Vidrine owes Ms. Richard $398.58, the difference between $968.58 and $570.00. Judgment is rendered accordingly.

MS. RICHARD'S ENTITLEMENT TO ATTORNEY FEES
According to La. R.S. 23:632, reasonable attorney fees shall be allowed an employee in the event a well-founded suit for unpaid wages is filed. Unlike penalty wages, courts do not permit equitable defenses to the award of attorney fees when a "well-founded suit" for wages is filed. Beard, 707 So.2d at 1237. Suits in which the recovery of back wages is granted are considered "well-founded." Wilson v. Inessa Stewart's Antiques, Inc., 96-2767 (La.App. 1 Cir. 2/20/98), 708 So.2d 1132, 1135, writ denied, 98-0777 (La.5/8/98), 718 So.2d 435. Reasonable attorney fees are to be awarded even if penalty wages are not due. Cochran v. American Advantage Mortgage Company, Inc., 93-1480 (La. App. 1 Cir. 6/24/94), 638 So.2d 1235, 1240.
Ms. Richard's suit for unpaid wages is well-founded as she partially prevailed on appeal. See Beard, 707 So.2d at 1237. Accordingly, she is entitled to attorney fees. During the hearing of this matter, Ms. Richard's attorney submitted a "Statement of Account" reflecting his hourly rate of $162.50 per hour and that he spent 19.5 hours preparing and prosecuting Ms. Richard's case before the trial court, resulting in attorney *1180 fees of $3,168.75. We conclude this is a reasonable amount and will award these attorney fees to Ms. Richard. We also note Ms. Richard requests an additional amount of attorney fees for services rendered on appeal, services this court may consider upon appellate review. See Brown, 610 So.2d at 172. We conclude that, under the circumstances, an additional award of $1,000.00 is warranted.

DECREE
For the foregoing reasons, the trial court's judgment, dismissing Ms. Richard's claim is REVERSED. Judgment is RENDERED, awarding Ms. Richard $398.58 in unpaid wages and $4,168.75 in attorney fees. Costs of this appeal are assessed to Vidrine.
NOTES
[1] Because we decide this case on the basis of the first two arguments advanced by Ms. Richard, we need not address the third argument.
[2] Louisiana Revised Statute 23:631 provides:

A. (1)(a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge.
(b) Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of resignation, whichever occurs first.
(2) Payment shall be made at the place and in the manner which has been customary during the employment, except that payment may be made via United States mail to the laborer or other employee, provided postage has been prepaid and the envelope properly addressed with the employee's or laborer's current address as shown in the employer's records. In the event payment is made by mail the employer shall be deemed to have made such payment when it is mailed. The timeliness of the mailing may be shown by an official United States postmark or other official documentation from the United States Postal Service.
(3) The provisions of this Subsection shall not apply when there is a collective bargaining agreement between the employer and the laborer or other employee which provides otherwise.
B. In the event of a dispute as to the amount due under this Section, the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section. The employee shall have the right to file an action to enforce such a wage claim and proceed pursuant to Code of Civil Procedure Article 2592.
C. With respect to interstate common carriers by rail, a legal holiday shall not be considered in computing the three day period provided for in Subsection A of this Section.
D. (1) For purposes of this Section, vacation pay will be considered an amount then due only if, in accordance with the stated vacation policy of the person employing such laborer or other employee, both of the following apply:
(a) The laborer or other employee is deemed eligible for and has accrued the right to take vacation time with pay.
(b) The laborer or other employee has not taken or been compensated for the vacation time as of the date of the discharge or resignation.
(2) The provisions of this Subsection shall not be interpreted to allow the forfeiture of any vacation pay actually earned by an employee pursuant to the employer's policy.
[3] Louisiana Revised Statute 23:632 provides:

Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.
[4] Louisiana Civil Code article 1893 provides:

Compensation takes place by operation of law when two persons owe to each other sums of money or quantities of fungible things identical in kind, and these sums or quantities are liquidated and presently due.
In such a case, compensation extinguishes both obligations to the extent of the lesser amount.
Delays of grace do not prevent compensation.
[5] Louisiana Civil Code article 1901 provides:

Compensation of obligations may take place also by agreement of the parties even though the requirements for compensation by operation of law are not met.
Contractual compensation is sometimes referred to as "facultative compensation." See Brock v. Pan American Petroleum Corporation, 186 La. 607, 173 So. 121, 123-124 (1937); Keene v. Reggie, 96-740 (La.App. 3d Cir.10/22/97), 701 So.2d 720, 725 n. 1; In re Interstate Trust & Banking Company, 194 So. 35 (La.App.Orl.1940).
[6] Louisiana Civil Code article 1902 provides:

Although the obligation claimed in compensation is unliquidated, the court can declare compensation as to that part of the obligation that is susceptible of prompt and easy liquidation.
[7] Because we find a reasonable basis for the trial court's implicit determination that the parties agreed to contractual compensation as provided by La. C.C. art.1901, it was not necessary that the requirements of legal compensation under La. C.C. art. 1893 (i.e., "liquidated" and "presently due") exist.
[8] Louisiana Revised Statute 23:691 provides:

No person shall, whether for his own account or for that of any other person, lend or advance money to any one of his employees at a greater rate of interest than eight per cent per annum. Whoever violates the provisions of this Section shall be fined not less than twenty-five dollars nor more than one hundred dollars, or imprisoned for not more than three months, or both.
[9] Louisiana Revised Statute 9:3501 provides:

Any contract for the payment of interest in excess of that authorized by law shall result in the forfeiture of the entire interest so contracted.