Judge Paula A. Brown
This appeal arises out of a contract dispute between Appellant/Contractor, Construction Management Enterprises ("CME"), its bond surety, Hudson Insurance Group (collectively, "CME"), and Appellee/Sub-Contractor, Leigh of All Trades, L.L.C. d/b/a By Land or Sea Construction, LLC ("LSC"), regarding sums owed on a public works construction contract. CME appeals the district court's grant of partial summary judgment in favor of LSC, finding CME liable for $ 29,072.19, the balance due on the subcontract. Finding no error of law, we affirm the judgment.
FACTUAL AND PROCEDURAL HISTORY
On February 23, 2017, the Non-Flood Protection Assets Management Authority (the "Management Authority") entered into a $ 350,000.00 public works contract ("the prime contract") with CME for the demolition of certain boathouses and improvements (the "Project"). CME obtained a payment and performance bond from Hudson Insurance Group for the Project.
On September 30, 2017, CME and LSC entered into a subcontract, valued at $ 75,000.00, for LSC to perform designated portions of the demolition work. The subcontract provided for LSC to commence work within 24 hours after LSC was notified to do so by CME, and the work was required to be completed within 22 days from the notice to proceed. The subcontract required payment of $ 10,000.00 upon signing, $ 10,000.00 upon completion of the first week of demolition, and $ 55,000.00 within thirty days after completion of LSC's work.
LSC started work on the Project on or about October 5, 2017. CME paid LSC the initial $ 20,000.00 owed on the subcontract. Thereafter, LSC submitted invoices for the *66 remaining work completed in accordance with the original terms of the subcontract and for additional work requested by CME that allegedly went beyond the scope of the subcontract. CME made partial payments on these invoices.
The Management Authority, on November 15, 2017, executed its Notice of Substantial Completion of the Project; and on November 17, 2017, it filed the Notice of Substantial Completion in the Orleans Parish Mortgage Records.
Due to CME's failure to pay LSC's outstanding invoices, on November 20, 2017, LSC filed a Sworn Statement of Claim and Privilege ("Statement of Claim") with the Recorder of Mortgages in the amount of $ 186,550.00. On December 14, 2017, LSC amended its Statement of Claim to $ 189,080.00, which included an additional $ 2,530.00 for additional work performed on the Project on November 29, 2017, at CME's request.
On December 20, 2017, LSC filed a petition against the Management Authority and CME to recover the outstanding amounts owed under the subcontract, sums for the additional work performed beyond the scope of the subcontract, and for damages allegedly caused by CME's delays. CME[1] denied the allegations of the petition and pled affirmative and alternative defenses that included CME's entitlement to an offset.
As part of its response to LSC's petition, the Management Authority filed a petition for concursus, depositing $ 52,454.50, the remaining balance of the prime contract, into the registry of the court.[2] On June 11, 2018, the Management Authority, CME, and LSC entered a consent judgment, which permitted LSC to withdraw $ 25,927.81 out of the deposited funds. Afterwards, on August 8, 2018, LSC filed a motion for partial summary judgment against CME[3] to recover the remaining $ 29,072.19 owed under the subcontract.[4]
In opposition, CME argued that its offset defense barred LSC's right to partial summary judgment. CME offered as evidence the 1442 deposition testimony of its corporate representative and a statement of back charges attached thereto, which itemized CME's offset damages.
LSC, in response, asserted that CME's offset defense was for unliquidated damages; and, as such, the unliquidated damages could not be used to offset LSC's liquidated claim for payment. LSC, also, specifically objected to the admissibility of CME's statement of back charges. LSC argued the statement of back charges was unsupported by an affidavit and LSC disputed CME's assertion that CME's corporate representative properly authenticated the charges listed in the statement of back charges during his 1442 deposition. LSC argued that the deposition revealed the corporate representative did not actually prepare the statement of back charges, nor was he sure when it was prepared.[5]
*67 The district court heard argument on the motion on October 26, 2018. After oral argument, the district court granted LSC's motion for partial summary judgment and sustained LSC's objection to the statement of back charges, excluding it from evidence. The district court designated the judgment as a final judgment pursuant to La. C.C.P. art. 1915(B)(1), finding no just reason to delay.[6]
This timely appeal followed.
STANDARD OF REVIEW
This Court delineated the standard of review for a motion for summary the standard of review for a motion for summary judgment in SBN v. FNBC LLC v. Vista Louisiana, LLC , 2018-1026, pp. 5-6 (La. App. 4 Cir. 3/27/19), 267 So.3d 655, 660 as follows:
Summary judgments are reviewed de novo one appeal, with the reviewing court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." Smith v. Robinson , [20] 18-0728, p. 5 (La. 12/5/18), 265 So.3d 740, 744, 2018 WL 6382118, (citing La. C.C.P. art. 966 ; Louisiana Safety Ass'n of Timbermen Self-Insurers Fund v. Louisiana Ins. Guar. Ass'n , [20]09-0023, p. 5 (La. 6/26/09), 17 So.3d 350, 353 ). Likewise, "when a matter involves the interpretation of a statute, it is a question of law, and a de novo standard of review is applied." New Orleans Fire Fighters Pension & Relief Fund v. City of New Orleans , 17-0320, p. 5 (La. App. 4 Cir. 3/21/18), 242 So.3d 682, 688 (citing Red Stick Studio Dev., L.L.C. v. State ex rel. Dep't. of Econ. Dev. , 10-0193, p. 9 (La. 1/19/11), 56 So.3d 181, 187 ).
The summary judgment procedure is favored. La. C.C.P. art. 966(A)(2).[7] The standard for obtaining a summary judgment is set forth in La. C.C.P. art. 966(A)(3), which provides that "[a]fter an opportunity for adequate discovery, a *68 motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." Whether a fact is material is a determination that must be made based on the applicable substantive law. Roadrunner Transp. Sys. v. Brown , [20]17-0040, p. 7 (La. App. 4 Cir. 5/10/17), 219 So.3d 1265, 1270 (citing Smith v. Our Lady of the Lake Hosp., Inc. , 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751 ).
DISCUSSION
CME argues the district court erred in granting LSC's motion for partial summary judgment relief in the following respects: (1) genuine issues of material fact remain regarding CME's defense of offset or compensation;[8] and (2) CME's statement of back charges should have been admitted into evidence. We will address each argument in turn.
Offset Defense
CME contends that it is entitled to a legal offset in the amount of $ 29,072.19, pursuant to La. C.C. art. 1893. La. C.C. art. 1893 states, in relevant part:
Compensation takes place by operation of law when two persons owe to each other sums of money or quantities of fungible things identical in kind, and these sums or quantities are liquidated and presently due.
In such a case, compensation extinguishes both obligations to the extent of the lesser amount.
The Louisiana Supreme Court, in American Bank v. Saxena , 553 So.2d 836, 844 (La. 1989), explained legal offset[9] as follows:
Set-off, or to use the codal term, compensation, takes place by operation of law when two persons owe to each other sums of money and these sums are liquidated and presently due. In such a case, compensation extinguishes both obligations to the extent of the lesser amount. [La.] C.C. [art.] 1893.
"The two debts must be equally liquid..... [A] liquid debt [is] one whose existence is certain and its quantity determined. A disputed debt is not liquid and cannot be admitted as susceptible of compensation unless the one who asserts compensation has in hand the proof of the existence of the disputed debt and is thus in a position to prove it promptly." 4 Aubry & Rau, Cours de Droit Civil Francais, s. 326 (6th ed. 1965).
A claim is liquidated when the debt is for an amount capable of ascertainment by mere calculation in accordance with accepted legal standards. Sims v. Hays, 521 So.2d 730, 733 (La. App. 2d Cir. 1988). Thus, a determination as to the liquidity of a claim is an essential prerequisite *69 to deciding whether such a claim is a proper basis for a plea of compensation. Lack of sufficient liquidity and demandability will preclude such a plea. Hartley v. Hartley, 349 So.2d 1258 (La. 1977) (husband's potential claim against community funds could not be used as compensation against wife's claim for past due alimony).
Thus, to determine whether CME has asserted a valid offset defense, this Court must first examine the liquidity of CME's claimed offset damages.
In calculating its $ 29,072.19 offset claim, CME itemizes that LSC owes CME liquidated damages of $ 9,110.48 for LSC's failure to provide labor and $ 2,961.17 for materials and receipts that were LSC's obligations under the scope of work provisions outlined in the subcontract.[10] Additionally, CME argues that the prime contract specifically entitles it to liquidated damages of $ 1,000.00 per day[11] arising out of LSC's failure to complete the work within 22 days as required by the subcontract's pay schedule provisions.[12] CME avers that LSC took an additional 33 days to complete its work on the Project based on LSC's October 5, 2017 start date and its finish date of November 29, 2017. Thus, CME represents that LSC is liable to CME for liquidated damages in excess of $ 17,000.00 for delay damages. CME characterizes these offset damages as liquid in that the damages can be ascertained by calculation in accordance with accepted legal standards.
Contrariwise, LSC maintains CME's claimed offset damages are not liquid because *70 LSC has no liability for any of the expenditures contained in CME's statement of back charges. Particularly, LSC disputes it owes a total of $ 12,071.65 in back charges for any alleged failure to fulfill its obligations under the subcontract. LSC asserts that those charges, which encompassed equipment and labor costs, arose from CME's obligations. Similarly, LSC contests that it owes $ 17,000.00 in delay damages. While LSC acknowledges that liquidated damages, as stated in the prime contract, may be applied for in the event the work in the subcontract is not timely completed, LSC emphasizes that the Management Authority did not assess CME with $ 1,000.00 per day in liquidated damages for delays; CME presented no evidence at the summary judgment hearing to show it actually sustained damages in connection with any delays; and CME did not file a reconventional demand to recover delay damages. LSC contends that any delays in the completion of the Project were solely attributable to CME. LSC maintains that at the time it entered into the subcontract with CME on September 30, 2017, CME was in default for failure to complete the Project within 60 days of executing the prime contract on February 23, 2017. Moreover, LSC challenges the legitimacy of the alleged back charges, contending that the 1442 deposition testimony of CME's corporate representative suggests the back charges were compiled only in response to LSC's petition. LSC notes that when counsel for LSC asked why the statement of back charges was not presented to LSC until after suit was filed, CME's corporate representative responded as follows:
To tell the truth, I didn't really plan on having to back-charge Leigh for anything. I didn't want to back charge Leigh. All right? But Leigh is trying to charge me for stuff that he has nothing -- there's no right for him to charge me for what he's trying to charge me for.
LSC further notes that the back charges were not specifically pled in support of CME's affirmative offset defense to the petition.
As discussed supra , a contested debt cannot be a liquidated debt unless the party who claims the offset has the proof to show entitlement to offset promptly and summarily. See Hartley , 349 So.2d at 1261. And, the burden of proof is on the party asserting the plea of offset. See Saxena , 553 So.2d at 844.
In the case sub judice , LSC clearly contests CME's offset expenditures. While CME argues LSC owes the expenditures listed in the statement of back charges, it has offered no undisputed evidence that the charges are presently due. CME has failed to meet its burden of proof that the money LSC allegedly owes CME is a liquidated debt. Thus, when we apply the principles enunciated in Hartley, supra and Saxena , supra , CME's claimed offset, although an ascertainable amount capable of mathematical calculation, is nevertheless a contested claim that has yet to be determined. Therefore, we conclude CME's offset claim against LSC is a claim for unliquidated damages.
Balance Due on Subcontract
Next, having found that the alleged amounts CME claims LSC owes is an unliquidated debt, we must determine whether the $ 29,072.19 LSC's claims it is owed on the subcontract is a liquid debt, warranting partial summary judgment.
In the case sub judice , LSC supported its motion for partial summary judgment with the September 30, 2017 subcontract agreement, affidavits, and a list of material facts not in dispute, including that its work had been accepted and the Management Authority had filed a notice *71 of substantial completion on the Project. CME did not contest that LSC had completed its work or that a balance of $ 29,072.19 was owed on the Subcontract. Indeed, CME's offset defense itself conclusively acknowledged the debt. Established jurisprudence provides that one who claims the defense of offset or compensation necessarily admits the underlying debt sued upon. Tolbird v. Cooper , 243 La. 306, 320, 143 So.2d 80, 85 n.3 (1962) ; see also Keiser v. Catholic Diocese of Shreveport, Inc. , 38,797, p. 8 (La. App. 2 Cir. 8/18/04), 880 So.2d 230, 235 (citations omitted).
In National Gypsum Co. v. Ace Wholesale, Inc. , 1996-215, p. 8 (La. App. 5 Cir. 11/26/96), 685 So.2d 306, 310 (citations omitted)-a case instructive on this issue-the Court of Appeal, Fifth Circuit, relying on Saxena , supra , affirmed summary judgment, finding that the defendant's unliquidated claim against the plaintiff could not be used as an offset to bar the plaintiff's right of recovery on its liquidated claim.[13] In National Gypsum Co. , the plaintiff, National Gypsum, filed suit on an open account for the sum of $ 208,724.14, which represented the unpaid amount for materials it had supplied to the defendant, Ace. Ace filed a reconventional demand against National Gypsum, alleging, in part, that National Gypsum had breached their agreement by charging an unfair market rate for its materials and that Ace had sustained significant business losses as a result of National Gypsum's unfair pricing practices. In reaching its conclusion, the appellate court wrote, "[i]t is clear from our jurisprudence that a claim for offset or compensation is not sufficient to prevent summary judgment on a liquidated debt where the compensation is not based on a liquidated claim." Id. , 1996-215,p. 9, 685 So.2d at 310.
Consequently, we conclude LSC proved its entitlement to the $ 29,072.19 was for a liquidated claim, and CME's unliquidated claim against the LSE could not be used as an offset to bar LSE's right of recovery on its liquidated claim. Any factual issues concerning LSC's unliquidated back charges claim are not germane to this Court's determination as to whether or not the district court properly granted partial summary judgment. Once LSC met its burden of proof, the burden shifted to CME to produce factual support to establish the existence of a genuine issue of material fact or show that LSC was not entitled to summary judgment as a matter of law. See La. C.C.P. art. 966(D)(1).[14] CME failed to meet this burden. The record reveals that other than its offset defense and an attempt to introduce the statement of back charges into evidence, as will be addressed infra , CME raised no *72 other valid defenses or offered no other evidence to defeat summary judgment.
Accordingly, based upon our de novo review, we find no genuine issues of disputed facts remained which, as a matter of law, precluded LSC's right to partial summary judgment relief for payment of the $ 29,072.19 balance owed on the subcontract.
This assignment of error is without merit.
Admissibility of Back Statement Charges
CME argues the district court erred in excluding its statement of back charges from admission into evidence. In support of its admissibility, CME avers the document was properly authenticated and verified by its corporate representative, had previously been produced in response to LSC's discovery demands, and had also been attached to LSC's motion for partial summary judgment. As discussed, supra , the sums included within the statement of back charges represented contested, unliquidated damages that cannot defeat the motion for partial summary judgment. This finding renders moot any alleged error attached to the admissibility of the statement of back charges. Thus, we pretermit discussion of this assignment of error.
CONCLUSION
Wherefore, based on the foregoing reasons, the judgment of the district court is affirmed.
AFFIRMED

CME and Hudson filed separate answers. The record shows Hudson's answer asserted similar defenses as those pled by CME.

See Non-Flood Protection Assets Management Authority v. Construction Management Enterprises, LLC, et al , Docket Number 2018-3017, Section "F-7."

LSC and the Management Authority executed a joint motion for partial dismissal of LSC's claims against the Management Authority on August 31, 2018, with LSC reserving all of its other rights and actions against CME.

$ 75,000.00 (subcontract value)-$ 20,000.00 (CME payments)-$ 25,927.81(concursus payment) = $ 29,072.19.

The July 12, 2018 deposition testimony of CME's corporate representative, Martin Fears, and the statement of back charges, were also attached as exhibits to LSC's motion for partial summary judgment. The deposition testimony included the following exchange:
Q. Let's go over this real quick. This is going to be Exhibit 8 [statement of back charges]. When was this document prepared?
A. I can't recall.
Q. Do you know who prepared it?
A. My office.
Q. Do you know who at your office prepared it?
A. Joann
Q. What's Joann's position?
A. She's the office manager.
* * *
Q. Do you know who directed Joann to prepare it?
A. Oh, I did.
Q. Do you know when?
A. I don't.
* * *
Q. Would it help if I gave you any kind of dates?
A. Probably not. I know it was right around that time. It was right at the end of the job when it was being when it was being prepared. It was being kept track of the whole time from October on.
* * *
Q. Okay. So you don't know when this document was prepared initially?
A. No.

La. C.C.P. art. 1915(B)(1) provides, in relevant part, that "[w]hen a court renders a partial judgment or partial summary judgment ... the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay."

La. C.C.P. art. 966(A)(2) provides that "[t]he summary judgment procedure is designed to secure, the just, speedy, and inexpensive determination of every action" and that "[t]he procedure is favored and shall be construed to accomplish these ends."

The doctrine of "offset" is also jurisprudentially and statutorily referenced as "set-off" or compensation. Here, CME and LSC both reference the "offset" defense; accordingly, that term shall be employed in this opinion.

There are two other types of offset-contractual and judicial. Contractual offset is effected by the will of the parties in accord with La. C.C. art. 1901 ; and judicial offset is effected by the courts in accord with La. C.C. art. 1902. Richard v. Vidrine Automotive Services, Inc. , 1998-1020 (La. App. 1 Cir. 4/1/99), 729 So.2d 1174, 1178 (citations omitted). As to contractual offset, La. C.C. art. 1901 provides that "[c]ompensation of obligations may take place also by agreement of the parties even though the requirements for compensation by operation of law are not met." With reference to judicial offset, La. C.C. art. 1902 provides that "although the obligation claimed in compensation is unliquidated, the court can declare compensation as to that part of the obligation that is susceptible of prompt and easy liquidation."

Scope of Work subsection includes the following:
"By Land or Sea Construction" will mobilize two boats. One boat will be a 20' x 60' complete with excavator and rotating grapple. The second boat will be 20' x 28' to be used for transporting debris and extracted pilings to the shore for disposal by others. Each boat will have a required deck hand working for "By Land or Sea Construction". All required fuel, insurance, and manual labor to operate the two boats and associated equipment is furnished by "By Land or Sea Construction".
"By Land or Sea Construction" will pull all necessary pilings as specified. If any of the pilings are unable to be pulled or they happen to get broke off during removal then CME, LLC will supply a diver to cut the piling from the water bottom.
The boat and excavator with rotating grapple will be used to disassemble the boat house structures and lower the material onto the smaller boat to take to shore. CME, LLC will supply all laborers not on the boats needed for demo of the boat houses. Any required cutting of heavy steel with torches shall also be furnished by others.
CME, LLC will furnish all required containment boom, with pontoon floats and laborers required to manipulate or move the boom as required. Additionally, CME LLC will supply dumpsters and laborers and excavator on shore to take possession of the debris from the boat so others can dispose of properly in land fill.

The liquidated damages provision in the prime contract between the Management Authority and CME provides, in pertinent part:
Contractor agrees to complete all work contracted for within sixty (60) calendar days from the date the work order/notice to proceed is issued by Owner (the "Contract Time"). It is agreed that should the Contractor fail to finish the demolition work on or before the time specified, Contractor shall pay to or allow the Owner to withhold any sum due the Contractor on this Contractor, by way of liquidated damages, the sum of One Thousand Dollars ($ 1000.00) per diem, for each and every day thereafter until the Project is substantially completed in accordance with the Contract Documents.

The Pay Schedule subsection included within the subcontract states, in relevant part, that the "[t]ime to complete the work shall be 22 days from Notice to Proceed. If not completed in this time period, the liquidated damages as stated in the primary contract may be applied. Time to complete shall include all necessary prep through substantial complete [sic]."

See also In re Mashburn Marital Trusts , 2010-0278, p. 19 (La. App. 1 Cir. 12/22/10), 52 So.3d 1136, 1147, where, in affirming the district court's judgment that trustees could not use an unliquidated claim against the beneficiary to offset the income the beneficiary was entitled to receive from his family trust, the First Circuit found that Louisiana law does not permit the use of an unliquidated claim to offset a liquidated claim.

La. C.C.P. art. 966(D)(1) states the following:
The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.